## BUTE *v.* ILLINOIS.

No. 398.   Argued February 12, 1948.—Decided April 19, 1948.

*Victor Brudney* argued the cause and filed a brief for petitioner.

*William C. Wines,* Assistant Attorney General of Illinois, argued the cause for respondent. With him on the brief was *George F. Barrett,* Attorney General.

MR. JUSTICE BURTON delivered the opinion of the Court.

In the Circuit Court of La Salle County, Illinois, the petitioner, Roy Bute, pleaded guilty to the crime of "taking indecent liberties with children" as charged in each of two indictments and, on each plea, was sentenced to confinement in the Illinois State Penitentiary for not

less than one nor more than 20 years, the sentences to run consecutively. Each common law record is silent on the subject of counsel for the petitioner's defense. The issue here is whether or not each state sentence shall be held to have been imposed in violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States [1] because each common law record shows that the petitioner appeared "in his own proper person" and does not show that the court inquired as to the petitioner's desire to be represented by counsel, or his ability to procure counsel, or his desire to have counsel assigned to him to assist him in his defense, or that such counsel was offered or assigned to him. We hold that such a silence in the respective records does not suffice to invalidate the sentences. We hold further that, in the absence of any showing beyond that in these records, the due process clause of the Fourteenth Amendment did not require the Illinois court to make the inquiries or the offer or assignment of counsel now claimed to have been the right of the petitioner.

At the time of these indictments, June 17, 1938, the petitioner was 57 years old. Each indictment, in its first count, charged him with taking indecent liberties on May 19, 1938, with a girl under the age of 15, and, in its second count, with attempting to do so. The first indictment related to a girl of eight and the second to a girl of 11. The offenses charged were violations of Ill. Rev. Stat. c. 38, § 109 (1937).[2]

---

[1] ". . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U. S. Const. Amend. XIV, § 1.

[2] ". . . any person of the age of seventeen years and upwards who shall take, or attempt to take, any immoral, improper or indecent

The intelligibility of the indictments is evident from the following language quoted from the first:

"That Roy Bute late of said County, on to wit: the 19th day of May in the year of our Lord one thousand nine hundred and thirty-eight at and within the said County of La Salle, the said Roy Bute being a male person of the age of seventeen (17) years and upwards, did then and there unlawfully and feloniously take certain immoral, improper and indecent liberties with a certain female child, under the age of fifteen (15) years, and of the age of eight (8) years, to-wit, . . . with intent of arousing, appealing to and gratifying the lust, passion and sexual desires of him the said Roy Bute contrary to the form of the statute in such case made and provided, and against the peace and dignity of the same People of the State of Illinois." [3]

The material portions of the records in these cases are identical, except for the names and ages of the children. They contain all that was before the Supreme Court of

liberties with any child of either sex, under the age of fifteen years, with the intent of arousing, appealing to or gratifying the lust or passions or sexual desires, either of such person or of such child, or of both such person and such child, . . . shall be imprisoned in the penitentiary not less than one year nor more than twenty years: . . . ."

[3] An indictment stating this offense substantially in the language of the statute, though not setting out facts constituting the elements of the crime, was sufficient. *People* v. *Rogers*, 324 Ill. 224, 229, 154 N. E. 909, 911; *People* v. *Butler*, 268 Ill. 635, 641, 109 N. E. 677, 679; *People* v. *Scattura*, 238 Ill. 313, 314–315, 87 N. E. 332, 333.

A copy of each indictment, with both counts on the same sheet, was furnished to the petitioner and the devastating frankness of the second count in describing the acts complained of rendered impossible any misunderstanding of the charge. The petitioner does not contend that he failed to understand it. By leave of court, the State entered "Nolle Prosequi" as to each second count.

Illinois or that is before this Court. The following appears in each:

"ARRAIGNMENT AND PLEA OF GUILTY—June 20, 1938

"Now on this day come the said People by Taylor E. Wilhelm, State's Attorney, and the said defendant in his own proper person also comes; Whereupon the said defendant is furnished with a copy of the indictment, a list of witnesses and jurors herein.

"And the said defendant being now arraigned before the bar of this Court moves the Court for leave to enter his plea of Guilty of the crime of taking indecent liberties with children in manner and form as charged in the first count of the indictment herein; and the Court having admonished and explained to the said defendant the consequences and penalties, which will result from said plea, and the said defendant still persisting in his desire to enter his plea of guilty to the crime of taking indecent liberties with children, in manner and form as charged in the first count of the indictment herein, the court grants such leave.

"Thereupon the said defendant enters his plea of guilty of the crime of taking indecent liberties with children, in manner and form as charged in the first count of the indictment herein.

"Thereupon the Court finds the age of the said defendant to be fifty-seven (57) years.

"JUDGMENT

"Now again on this day come the said People by Taylor E. Wilhelm, State's Attorney, and the said defendant Roy Bute, in his own proper person also comes, and the said defendant, Roy Bute, not saying anything further why the judgment of the Court

should not now be pronounced against him on his plea of guilty of the crime of taking indecent liberties with children in manner and form as charged in the first count of the indictment herein, heretofore entered herein.

"Whereupon it is Ordered by the Court that the said defendant, Roy Bute, be and he is hereby sentenced on said plea of guilty as aforesaid to confinement in the Illinois State Penitentiary at Joliet for a period of not less than one (1) year, nor more than twenty (20) years."

In October, 1946, the petitioner, while serving his sentence in the Illinois State Penitentiary, and appearing *pro se,* filed in the Supreme Court of Illinois motions asking leave "to Sue as a Poor Person for Writ of Error . . ." to review each of the original proceedings. These were granted and he filed his petitions, *pro se,* based upon the common law records in the respective cases. He relied particularly upon the claim that he had been denied representation by counsel, that the trial court had not advised him of his rights or of his right to the assistance of counsel and that he had been rushed to trial with such expedition as to deprive him of a fair and impartial trial, all of which rights he claimed were guaranteed to him by the State and Federal Constitutions.

The Supreme Court of Illinois affirmed both judgments. 396 Ill. 588, 72 N. E. 2d 813. It denied expressly each of the above-mentioned claims and denied a rehearing. We granted certiorari in recognition of the frequently arising constitutional principle involved. 332 U. S. 756. The petitioner's presentations, *pro se,* were marked with professional accuracy and clarity but the petition for certiorari states that the petitioner is ignorant of the law as he was at the time of his trial, and that the documents filed by him *pro se* had been prepared for him. We

appointed a member of the Bar of this Court to act as counsel for the petitioner here and the petitioner's claims have been fully and competently presented to this Court.

EFFECT OF FOURTEENTH AMENDMENT.

The cases turn upon the meaning of "due process of law" under the Fourteenth Amendment in relation to the assistance of counsel for the defense of the accused in state criminal trials such as these. In *Powell* v. *Alabama,* 287 U. S. 45, this Court granted relief in a group of capital cases which demonstrated the essential need for applying the full force of the Fourteenth Amendment to the invalidation of purportedly valid judgments rendered in a state court under the circumstances there shown. Those and other less extreme cases have well illustrated the kind of service to the cause of justice which can be rendered by this Court in thus giving effect to the Fourteenth Amendment.

> "The due process of law clause in the Fourteenth Amendment does not take up the statutes of the several States and make them the test of what it requires; nor does it enable this Court to revise the decisions of the state courts on questions of state law. What it does require is that state action, whether through one agency or another, shall be consistent with the fundamental principles of liberty and justice which lie at the base of all our civil and political institutions and not infrequently are designated as 'law of the land.' Those principles are applicable alike in all the States and do not depend upon or vary with local legislation." *Hebert* v. *Louisiana,* 272 U. S. 312, 316–317.

> "This court has never attempted to define with precision the words 'due process of law,' nor is it necessary to do so in this case. It is sufficient to say that

there are certain immutable principles of justice which inhere in the very idea of free government which no member of the Union may disregard, as that no man shall be condemned in his person or property without due notice and an opportunity of being heard in his defence." *Holden* v. *Hardy,* 169 U. S. 366, 389–390.

The foregoing statements were referred to with approval in *Powell* v. *Alabama, supra,* at pp. 67, 71–72.

The present case, on the other hand, illustrates equally well the kind of judgments by a state court that should not be invalidated as lacking in the due process of law required by the Fourteenth Amendment. This is so, although the procedure followed, in 1938, by the state court in the instant cases, as to counsel for the accused might not have satisfied the practice then required of a federal court in the case of comparable federal crimes. The Fourteenth Amendment, however, does not say that no state shall deprive any person of liberty without following the *federal* process of law as prescribed for the federal courts in comparable federal cases. It says merely "nor shall any State deprive any person of life, liberty, or property, without due process of law; . . . ." This *due* process is not an equivalent for the process of the federal courts or for the process of any particular state. It has reference rather to a standard of process that may cover many varieties of processes that are expressive of differing combinations of historical or modern, local or other juridical standards, provided they do not conflict with the "fundamental principles of liberty and justice which lie at the base of all our civil and political institutions . . . ." *Hebert* v. *Louisiana, supra,* at p. 316. This clause in the Fourteenth Amendment leaves room for much of the freedom which, under the Constitution of the United States and in accordance with its purposes, was originally reserved to the states for their exercise of

their own police powers and for their control over the procedure to be followed in criminal' trials in their respective courts. It recognizes that differences arise naturally between the procedures in the state courts and those in the federal courts.[4]

One of the major contributions to the science of government that was made by the Constitution of the United States was its division of powers between the states and the Federal Government. The compromise between state rights and those of a central government was fully considered in securing the ratification of the Constitution in 1787 and 1788.[5] It was emphasized in the "Bill of Rights," ratified in 1791. In the ten Amendments constituting such Bill, additional restrictions were placed upon the Federal Government and particularly upon procedure in the federal courts.[6] None were placed upon

---

[4] One long recognized difference between the trial procedure in the federal courts and that in many state courts is the greater freedom that is allowed to a federal court, as compared with that allowed to a state court, to comment upon the evidence when submitting a case to a jury. See *Quercia* v. *United States*, 289 U. S. 466, 469; *Patton* v. *United States*, 281 U. S. 276, 288; *Simmons* v. *United States*, 142 U. S. 148, 155. The federal practice is based upon the rules of common law comparable to those mentioned in the Seventh Amendment. The federal and state practices have their respective proponents and opponents, but both practices unquestionably represent "due process of law."

[5] See The Federalist, Number XLIV, Restrictions on the Authority of the Several States; Number XLV, The Alleged Danger from the Powers of the Union to the State Governments Considered; Number XLVI, The Influence of the State and Federal Governments Compared.

[6] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand

the states. On the contrary, the reserved powers of the states and of the people were emphasized in the Ninth and Tenth Amendments.[7] The Constitution was conceived in large part in the spirit of the Declaration of Independence which declared that to secure such "unalienable Rights" as those of "Life, Liberty and the pursuit of Happiness . . . . Governments are instituted among Men, deriving their just powers from the consent of the governed, . . . ." It sought to keep the control over individual rights close to the people through their states. While there have been modifications made by

Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

"In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U. S. Const. Amend. IV, V, VI, VII and VIII.

[7] "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

"The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U. S. Const. Amend. IX and X.

the states, the Congress and the courts in some of the relations between the Federal Government and the people, there has been no change that has taken from the states their underlying control over their local police powers and state court procedures. They retained this control from the beginning and, in some states, local control of these matters long antedated the Constitution. The states and the people still are the repositories of the "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, . . . ." [8] The underlying control over the procedure in any state court, dealing with distinctly local offenses such as those here involved, consequently remains in the state. The differing needs and customs of the respective states and even of the respective communities within each state emphasize the principle that familiarity with, and complete understanding of, local characteristics, customs and standards are foundation stones of successful self-government. Local processes of law are an essential part of any government conducted by the people. No national authority, however benevolent, that governs over 130,000,000 people in 48 states, can be as closely in touch with those who are governed as can the local authorities in the several states and their subdivisions. The principle of "Home Rule" was an axiom among the authors of the Constitution. After all, the vital test of self-government is not so much its satisfactoriness weighed in the scales of outsiders as it is its satisfactoriness weighed in the scales of "the governed." [9] While, under the Constitution of

---

[8] U. S. Const. Amend. X, note 7, *supra.*

[9] ". . . Due process of law in the latter [*i. e.,* the Fifth Amendment] refers to that law of the land which derives its authority from the legislative powers conferred upon Congress by the Constitution of the United States, exercised within the limits therein prescribed, and interpreted according to the principles of the common law. In the

the United States, the Federal Government, as well as each state government, is at bottom a government by the people, nevertheless, the federal sphere of government has been largely limited to certain delegated powers. The burden of establishing a delegation of power to the United States or the prohibition of power to the states is upon those making the claim. This point of view is material in the instant cases in interpreting the limitation which the Fourteenth Amendment places upon the processes of law that may be practiced by the several states, including Illinois. In our opinion this limitation is descriptive of a broad regulatory power over each state and not of a major transfer by the states to the United States of the primary and pre-existing power of the states over court procedures in state criminal cases.

Until the taking effect of the Fourteenth Amendment in 1868, there was no question but that the states were free to establish their own court procedures. This freedom included state practice as to the assistance of counsel to be permitted or assigned to the accused for his defense in state criminal cases. Because the Constitution of the United States, during nearly 80 formative years, thus permitted each state to establish, maintain and accustom its people to that state's own forms of "due process of law," a substantial presumption arises in favor of, rather than against, the lawfulness of those procedures and in favor of their right to continued recognition by the Federal Government as "due process of law." While such a pre-

---

Fourteenth Amendment, by parity of reason, it refers to that law of the land in each State, which derives its authority from the inherent and reserved powers of the State, exerted within the limits of those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions, and the greatest security for which resides in the right of the people to make their own laws, and alter them at their pleasure." *Hurtado* v. *California,* 110 U. S. 516, 535.

sumption does not arise in favor of any practice against which the Fourteenth Amendment was particularly directed, there is no reason to feel that, in 1868, such Amendment was particularly directed against the practice now before us.

### ILLINOIS CONSTITUTIONAL PROVISIONS.

From the inception of their statehood, the people of Illinois have recognized their own responsibility for the preservation of local due process of law and of the civil rights of individuals within the jurisdiction of that State. They dealt at length with such matters in their original constitution of 1818.   In Article VIII they provided—

> "That the general, great and essential principles of liberty and free government may be recognized and unalterably established, we declare:
>
> .        .        .        .
>
> " § 9. That in all criminal prosecutions, the accused hath a right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his favor; and in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage, and that he shall not be compelled to give evidence against himself." [10]
> Reprinted in Ill. Rev. Stat. (1937).

---

[10] Article VIII of the Illinois Constitution of 1818 contained 23 sections dealing with the types of matters that are found in the Federal Bill of Rights.   On the subject of "due process" it included the following:

"§ 8. That no freeman shall be imprisoned or disseized of his freehold, liberties or privileges, or outlawed or exiled, or in any manner deprived of his life, liberty or property, but by the judgment of his peers or the law of the land. . . ."

The Illinois Constitution of 1848 contained a comparable "Declaration of Rights" in Article XIII. Among that Article's 26 sections were §§ 8 and 9, substantially readopting language used in §§ 8 and 9 of Article VIII of the original constitution.[11]

In the Illinois Constitution of 1870, a "Bill of Rights" was set forth in Article II dealing with these subjects and including §§ 2 and 9 in the following form:

" § 2. No person shall be deprived of life, liberty or property, without due process of law.

.       .       .       .       .

"§ 9. In all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel, to demand the nature and cause of the accusation and to have a copy thereof, to meet the witnesses face to face, and to have process to compel

---

[11] Article XIII of the Illinois Constitution of 1848 contained the following:

"That the general, great and essential principles of liberty and free government may be recognized and unalterably established, we declare:

.       .       .       .       .

"§ 8. That no freeman shall be imprisoned or disseized of his freehold, liberties or privileges, or outlawed or exiled, or in any manner deprived of his life, liberty, or property, but by the judgment of his peers, or the law of the land.

"§ 9. That in all criminal prosecutions the accused hath a right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his favor; and in prosecutions by indictment or information, to speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed, which county or district shall have been previously ascertained by law, and that he shall not be compelled to give evidence against himself." Reprinted in Ill. Rev. Stat. (1937).

the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed." Reprinted in Ill. Rev. Stat. (1937).

These latter provisions were in effect in Illinois at the time of the trial of the instant cases. There is and can be no question raised here but that the procedure in the instant cases conformed to the Illinois Constitution as interpreted by the Supreme Court of that State.

The Constitution of the United States thus left the power to regulate the procedure as to the assistance of counsel for the defense of the accused in state criminal cases to the discretion of the respective states, at least until 1868. The Fourteenth Amendment then was adopted to meet the crying needs of that time.[12]

JUDICIAL INTERPRETATION OF FOURTEENTH AMENDMENT.

After exhaustive consideration of the subject, this Court has decided that the Fourteenth Amendment does not, through its due process clause or otherwise, have the effect of requiring the several states to conform the procedure of their state criminal trials to the precise procedure of the federal courts, even to the extent that the procedure of the federal courts is prescribed by the Federal Constitution or Bill of Rights. There is nothing in the Fourteenth Amendment specifically stating that the long rec-

---

[12] For historical treatments of the Sixth and Fourteenth Amendments in decisions of this Court in relation to the general subject matter of the instant cases see especially, *Adamson* v. *California,* 332 U. S. 46, concurring opinion pp. 61–68, dissenting opinion pp. 68–123; *Betts* v. *Brady,* 316 U. S. 455, 464–472, dissenting opinion pp. 477–480; *Johnson* v. *Zerbst,* 304 U. S. 458, 462–463; *Palko* v. *Connecticut,* 302 U. S. 319, 322–328; *Powell* v. *Alabama,* 287 U. S. 45, 59–69; *Hurtado* v. *California,* 110 U. S. 516, 520–538, dissenting opinion pp. 538–558; *Davidson* v. *New Orleans,* 96 U. S. 97, 100–104.

ognized and then existing power of the states over the procedure of their own courts in criminal cases was to be prohibited or even limited. Unlike the Bill of Rights, the Fourteenth Amendment made no mention of any requirement of grand jury presentments or indictments as a preliminary step in certain criminal prosecutions; any universal prohibition against the accused being compelled, in a criminal case, to be a witness against himself; any jurisdictional requirement of juries in all criminal trials; any guaranty to the accused that he have a right to the assistance of counsel for his defense in all criminal prosecutions; or any need to observe the rules of the common law in the re-examination of all facts tried by a jury.[13] In spite of such omissions, it is claimed here,

---

[13] A classic statement of why it is due process to do many things in the state courts, particularly of a procedural nature, that may not be done in federal courts because of the specific procedural requirements of the Federal Bill of Rights was made by Mr. Justice Cardozo in the light of his long experience in state courts.

"We have said that in appellant's view the Fourteenth Amendment is to be taken as embodying the prohibitions of the Fifth. His thesis is even broader. Whatever would be a violation of the original bill of rights (Amendments I to VIII) if done by the federal government is now equally unlawful by force of the Fourteenth Amendment if done by a state. There is no such general rule.

"The Fifth Amendment provides, among other things, that no person shall be held to answer for a capital or otherwise infamous crime unless on presentment or indictment of a grand jury. This court has held that, in prosecutions by a state, presentment or indictment by a grand jury may give way to informations at the instance of a public officer. *Hurtado* v. *California,* 110 U. S. 516; *Gaines* v. *Washington,* 277 U. S. 81, 86. The Fifth Amendment provides also that no person shall be compelled in any criminal case to be a witness against himself. This court has said that, in prosecutions by a state, the exemption will fail if the state elects to end it. *Twining* v. *New Jersey,* 211 U. S. 78, 106, 111, 112. Cf. *Snyder* v. *Massachusetts, supra,* p. 105; *Brown* v. *Mississippi,* 297 U. S. 278, 285. The Sixth Amendment calls for a jury trial in criminal cases and the Seventh for a jury trial in civil cases at common law where the value in con-

on behalf of the petitioner, that even though the failure of the state court in these cases to inquire of the accused as to his desire to be represented by counsel, or his ability to procure counsel, or his desire to have counsel assigned to him to assist him in his defense, and even though the failure of the state court in these cases to offer or assign counsel to the accused for his defense may have satisfied the Illinois law and have amounted to "due process of law" under the Illinois Constitution,[14] yet such practices did not satisfy the "due process of law" required of the states by the Fourteenth Amendment to the Constitution of the United States.

To sustain this claim, it is necessary for the petitioner to establish that, in spite of the constitutionality of the process of law developed by Illinois in its own criminal cases, prior to 1868, yet that same Illinois process of law, after 1868, no longer is constitutionally valid as "due process of law" under the Fourteenth Amendment. We recognize that the Fourteenth Amendment, as part of the supreme law of the land under Article VI of the original Constitution, supersedes "any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." The important question remains, however: what shall be considered to be to the contrary? It is the established policy of both the State and Federal Governments to treat possible conflicts between their powers in such a

---

troversy shall exceed twenty dollars. This court has ruled that consistently with those amendments trial by jury may be modified by a state or abolished altogether. *Walker* v. *Sauvinet,* 92 U. S. 90; *Maxwell* v. *Dow,* 176 U. S. 581; *New York Central R. Co.* v. *White,* 243 U. S. 188, 208; *Wagner Electric Mfg. Co.* v. *Lyndon,* 262 U. S. 226, 232. As to the Fourth Amendment, one should refer to *Weeks* v. *United States,* 232 U. S. 383, 398, and as to other provisions of the Sixth, to *West* v. *Louisiana,* 194 U. S. 258." *Palko* v. *Connecticut,* 302 U. S. 319, 323–324.

[14] Art. II, § 2, of the Illinois Constitution of 1870, *supra.*

manner as to produce as little conflict and friction as possible. So here the procedure followed by Illinois should not be held to violate the standard of permissible process of law broadly recognized by the Fourteenth Amendment unless the Illinois procedure violates "the very essence of a scheme of ordered liberty" and its continuance would "violate a 'principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" Cardozo, J., in *Palko* v. *Connecticut,* 302 U. S. 319, 325, with quotation from his opinion in *Snyder* v. *Massachusetts,* 291 U. S. 97, 105. See *Foster* v. *Illinois,* 332 U. S. 134, 137; *Adamson* v. *California,* 332 U. S. 46, concurring opinion at pp. 61–67; *Betts* v. *Brady,* 316 U. S. 455, 465; *Brown* v. *Mississippi,* 297 U. S. 278, 285–286; *Powell* v. *Alabama,* 287 U. S. 45, 61–62, 67, 71–72; *Hebert* v. *Louisiana,* 272 U. S. 312, 316; *Twining* v. *New Jersey,* 211 U. S. 78; *Holden* v. *Hardy,* 169 U. S. 366, 389–390; *Hurtado* v. *California,* 110 U. S. 516, 532, 535, 537.

It is natural for state procedures to differ from each other in many ways. It is permissible for the states to establish ways of safeguarding the respective interests of the prosecution and of the accused in their courts. These may differ from comparable practices developed in the courts of other states or of the United States. Before examining the Illinois practice and the precise facts of the cases before us, it is helpful to see what has been the practice in the courts of the United States and especially to see what such practice was in 1938, at the time of the trial of the instant cases. While such federal court practice does not establish a constitutional minimum standard of due process which must be observed in each state under the Fourteenth Amendment, yet such practice does afford an example approved by the courts of the United States. It thus contributes something toward establishing a general

standard of due process currently and properly applicable to the states under the Fourteenth Amendment.

## PRACTICE IN FEDERAL COURTS.

The practice in the federal courts as to the right of the accused to have the assistance of counsel is derived from the Sixth Amendment which expressly requires that, in all criminal prosecutions in the courts of the United States, the accused shall have the assistance of counsel for his defense.[15] There is no proof possible that the same practice would have developed under the due process clause of the Fifth Amendment had there been no specific provision on the subject in the Sixth Amendment. It is obvious also that there is no specific provision in the Fourteenth Amendment comparable to that in the Sixth Amendment. Furthermore, at the time of the trial of this case in 1938, the rule of practice even in the federal courts was not as clear as it is today. The federal statutes were then, and they are now, in practically the same form as when they were enacted in 1789 and 1790. They provided merely for a right of representation in the federal courts by the accused's own counsel and required assignment of counsel by the court only on accusations for treason or other capital crimes.[16] In fact, until the decision of this Court in May, 1938 (one month before the trial of the instant cases in the Illinois state court), in

---

[15] See note 6, *supra.* "By virtue of that provision [in the Sixth Amendment], counsel must be furnished to an indigent defendant prosecuted in a federal court in every case, whatever the circumstances." *Foster* v. *Illinois,* 332 U. S. 134, 136–137. See also, *Betts* v. *Brady,* 316 U. S. 455, 461, 464–465; *Glasser* v. *United States,* 315 U. S. 60, 70; *Johnson* v. *Zerbst,* 304 U. S. 458; *Palko* v. *Connecticut,* 302 U. S. 319, 327.

[16] "In all the courts of the United States the parties may plead and manage their own causes personally, or by the assistance of such counsel or attorneys at law as, by the rules of the said courts,

*Johnson* v. *Zerbst,* 304 U. S. 458, there was little in the decisions of any courts to indicate that the practice in the federal courts, except in capital cases, required the appointment of counsel to assist the accused in his defense, as contrasted with the recognized right of the accused to be represented by counsel of his own if he so desired. That pre-1938 practice, however, was in the face of the language of the Sixth Amendment which was held in *Johnson* v. *Zerbst, supra,* to require the appointment of counsel in any federal criminal case where the accused had no counsel and did not waive the assistance of counsel.[17]

---

respectively, are permitted to manage and conduct causes therein." Jud. Code, § 272, 36 Stat. 1164, 28 U. S. C. § 394.

This is almost verbatim as it was enacted as § 35 in the First Judiciary Act, September 24, 1789, 1 Stat. 92.

"Every person who is indicted of treason or other capital crime, shall be allowed to make his full defense by counsel learned in the law; and the court before which he is tried, or some judge thereof, shall immediately, upon his request, assign to him such counsel, not exceeding two, as he may desire, and they shall have free access to him at all seasonable hours. . . ." R. S. § 1034, 18 U. S. C. § 563.

This conforms closely to § 29 in the first Federal Crimes Act, approved April 30, 1790, 1 Stat. 118.

[17] "It is probably safe to say that from its adoption in 1791 until 1938, the right conferred on the accused by the Sixth Amendment 'to have the assistance of counsel for his defense' was generally understood as meaning that in the Federal courts the defendant in a criminal case was entitled to be represented by counsel retained by him. It was not assumed that this constitutional privilege comprised the right of a prisoner to have counsel assigned to him by the court if, for financial or other reasons, he was unable to retain counsel. The Sixth Amendment was not regarded as imposing on the trial judge in a Federal court the duty to appoint counsel for an indigent defendant.

.        .        .        .        .

"The marked departure effected by the decision in *Johnson* v. *Zerbst* created a practical difficulty in respect to cases previously

"The Sixth Amendment withholds from federal courts, in all criminal proceedings, the power and authority to deprive an accused of his life or liberty unless he has or waives the assistance of counsel." *Id.* at p. 463. See *Powell* v. *Alabama,* 287 U. S. 45, 68, 69 and *Patton* v. *United States,* 281 U. S. 276, 308, as quoted in the *Zerbst* case. See also, *Walker* v. *Johnston,* 312 U. S. 275.

The view of this Court as to the practice best adapted to the needs of the federal courts and most responsive to the requirements of the Federal Constitution and statutes as well as to the decisions of this Court is now stated in Rule 44 of the Federal Rules of Criminal Procedure which became effective March 21, 1946.[18] In view, however, of the applicability to the state courts of the Fourteenth rather than the Sixth Amendment, this new rule cannot be

---

tried. No obstacle existed in connection with the application of this ruling to subsequent proceedings." Holtzoff, The Right of Counsel Under the Sixth Amendment, 20 N. Y. U. L. Q. Rev. 1, 7–8, 10 (1944).

At the time of making the above statement, Judge Holtzoff was the Secretary for the Advisory Committee on Federal Rules of Criminal Procedure.

[18] "RULE 44. ASSIGNMENT OF COUNSEL. If the defendant appears in court without counsel, the court shall advise him of his right to counsel and assign counsel to represent him at every stage of the proceeding unless he elects to proceed without counsel or is able to obtain counsel." Fed. R. Crim. P., effective March 21, 1946, 327 U. S. 866–867, 18 U. S. C. 1946 ed., following § 687.

"This rule is a restatement of existing law in regard to the defendant's constitutional right of counsel as defined in recent judicial decisions. . . . The present extent of the right of counsel has been defined recently in *Johnson* v. *Zerbst,* 304 U. S. 458; *Walker* v. *Johnston,* 312 U. S. 275; and *Glasser* v. *United States,* 315 U. S. 60. The rule is a restatement of the principles enunciated in these decisions." Notes to the Rules of Criminal Procedure for the District Courts of the United States, as prepared under the direction of the Advisory Committee on Rules of Criminal Procedure, March, 1945, p. 38 [revised edition, pp. 40–41].

regarded as defining, even by analogy, the minimum requirement of due process for the states under the Fourteenth Amendment. The new rule is evidence only of what this Court considers suitable in the federal courts and the states, in their discretion, may or may not follow it. The states are free to determine their own practice as to the assistance of counsel, subject to the general limitation that such practice shall not deprive the accused of life, liberty or property without due process of law. Accordingly, the lack of conformity of Illinois practice in 1938 to the standards illustrated by the present Federal Rules of Criminal Procedure is by no means determinative of the issue before us.

### PRACTICE IN STATE COURTS.

As throwing light on the general practice in the several states, the National Commission on Law Observance and Enforcement, under the chairmanship of George W. Wickersham, in its Report on Prosecution in 1931, said:

> "In America counsel was allowed from an early date and State and Federal Constitutions guarantee to accused in all prosecutions 'the assistance of counsel for his defense,' in this or some equivalent language. It will be seen from this bit of history that, as indeed the courts have held, the right guaranteed is one of employing counsel, not one of having counsel provided by the Government. But in the spirit of the guaranty most of the States have by legislation authorized or even required the courts to assign counsel for the defense of indigent and unrepresented prisoners. As to capital cases, all the States so provide. Thirty-four States so provide for felonies and 28 for misdemeanors." Vol. I, p. 30.

The foregoing suggests the existence of a gradual voluntary trend among the states toward the authorization by

them of the appointment of counsel to assist the accused in his defense in all criminal prosecutions, with special consideration to the seriousness of the charge faced and to the actual needs of the accused under the circumstances of each case. Much of this trend has taken place since 1868. It is neither universal nor uniform. The above summary shows that 20 states, in 1931, had no statute authorizing such appointments of counsel in misdemeanor cases and 14 had none, even in felony cases, unless the charges were for capital offenses. Furthermore, some of these authorizations, as in Illinois, were subject to special limitations requiring an affirmative showing to be made by the accused of his inability to procure counsel for himself.

Another indication of the opinion of representative members of the Bench, Bar and law school faculties appears in the following quotation from § 203 of the Code of Criminal Procedure, approved by the American Law Institute in 1930:

> "Before the defendant is arraigned on a charge of felony if he is without counsel the court shall, unless the defendant objects, assign him counsel to represent him in the cause. Counsel so assigned shall serve without cost to the defendant, and shall have free access to the defendant, in private, at all reasonable hours while acting as counsel for him. Assignment of counsel shall not deprive the defendant of the right to engage other counsel at any stage of the proceedings in substitution of counsel assigned him by the court." At p. 88.

The Commentary of the Institute accompanying this Section shows that the assistance recommended for the accused in § 203 of the proposed Code was then far in advance of the statutes in most of the states. The Com-

mentary also illustrates the variations existing among the processes adopted by the states in their search for a satisfactory process of law in this regard. It demonstrates that, up to 1930, but limited progress had been made by statute toward the standard now claimed by the petitioner to have become constitutionally essential to a valid judgment in the instant cases in 1938.[19] It illustrates the wide difference naturally and constitutionally existing between what has been prescribed by the several states and what has been recommended to them by the Institute. We do not find in the Fourteenth Amendment authority for this Court to do what is asked of us here, namely, to require all the states to enforce in substance either Rule 44 of the new Federal Rules of Criminal Procedure or the proposed § 203 of the Code of Criminal Procedure recommended by the American Law Institute, all under penalty of the invalidation of every past and future nonconforming state judgment.

---

[19] The tabulations show that, as of 1930, 13 states "provide that if the defendant appear for arraignment without counsel he shall be informed by the court that it is his right to have counsel before being arraigned, and he shall be asked if he desire the aid of counsel." Six states "provide that the accused has a right to counsel: . . . ." Eighteen states, including Illinois, provide under varying conditions "that the court shall assign counsel if the accused desire it, and be unable to employ counsel: . . . ." Fifteen states, including Illinois, provide under varying conditions "that the court shall assign counsel if the accused be unable to employ counsel: . . . ." Both Illinois and Louisiana required a showing of inability to be made by the accused under oath. Five states "provide that the court shall assign counsel if accused desire it: . . . ." Three states provide that the court may appoint one or more attorneys to represent the accused and 14 "provide that the appointment of counsel by the court for defense of the accused shall not exceed two: . . . ." Thirteen states "provide that counsel for the defense shall have free access to the prisoner at all reasonable hours: . . . ." Code of Criminal Procedure, Commentary to § 203 (1930) 630–634.

In reviewing the situation further, in 1942, this Court, in *Betts* v. *Brady,* 316 U. S. 455, indicated that it did not regard it to be a violation of the Fourteenth Amendment for a Maryland trial court to refuse to appoint counsel to represent an indigent defendant charged with robbery under the circumstances of that case.[20]  We there stated the general principle as follows:

> "The due process clause of the Fourteenth Amendment does not incorporate, as such, the specific guarantees found in the Sixth Amendment, although a denial by a State of rights or privileges specifically embodied in that and others of the first eight amendments may, in certain circumstances, or in connection with other elements, operate, in a given case, to deprive a litigant of due process of law in violation of the Fourteenth. . . .  Asserted denial [of counsel] is to be tested by an appraisal of the totality of facts in a given case.  That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial.  In the application of such a concept, there is always the danger of falling into the habit of formulating the guarantee into a set

---

[20] This Court summarized those circumstances as follows:

"In this case there was no question of the commission of a robbery. The State's case consisted of evidence identifying the petitioner as the perpetrator.  The defense was an alibi.  Petitioner called and examined witnesses to prove that he was at another place at the time of the commission of the offense.  The simple issue was the veracity of the testimony for the State and that for the defendant. As Judge Bond says, the accused was not helpless, but was a man forty-three years old, of ordinary intelligence, and ability to take care of his own interests on the trial of that narrow issue.  He had once before been in a criminal court, pleaded guilty to larceny and served a sentence and was not wholly unfamiliar with criminal procedure." *Id.* at p. 472.

of hard and fast rules, the application of which in a given case may be to ignore the qualifying factors therein disclosed." *Id.* at pp. 461–462.[21]

---

[21] The Court also reviewed the material constitutional and statutory provisions of the thirteen original states. *Id.* at p. 467. It then summarized as follows other constitutional and statutory provisions currently in force:

"The constitutions of all the States, presently in force, save that of Virginia, contain provisions with respect to the assistance of counsel in criminal trials. Those of nine States may be said to embody a guarantee textually the same as that of the Sixth Amendment, or of like import. In the fundamental law of most States, however, the language used indicates only that a defendant is not to be denied the privilege of representation by counsel of his choice.

.        .        .        .        .

"In eighteen States the statutes now require the court to appoint in all cases where defendants are unable to procure counsel. . . . And it seems to have been assumed by many legislatures that the matter was one for regulation from time to time as deemed necessary, since laws requiring appointment in all cases have been modified to require it only in the case of certain offenses." *Id.* at pp. 467–468, 470–471.

Particularly from the failure of the states to treat the requirement of inquiry by the court as to counsel or the requirement of appointment of counsel, either uniformly or as a matter for incorporation in the state constitutions, the Court concluded—

"we are unable to say that the concept of due process incorporated in the Fourteenth Amendment obligates the States, whatever may be their own views, to furnish counsel in every such case. Every court has power, if it deems proper, to appoint counsel where that course seems to be required in the interest of fairness." *Id.* at pp. 471–472.

The dissenting opinion also marshals the states and collects them under the following headings: 35 states, including Illinois, by constitutional or statutory provision or by judicial decision or established practice judicially approved, require "that indigent defendants in noncapital as well as capital criminal cases be provided with counsel *on request:* . . ." (Italics supplied); of the remaining 13, nine "are without constitutional provision, statutes, or judicial decisions clearly establishing this requirement: . . ."; there are two states "in which dicta of judicial opinions are in harmony with the decision by the court below in this case: . . ." (here affirmed); and there are two

If, in the face of these widely varying state procedures, this Court were to select the rule contended for by the petitioner and hold invalid all procedure not reaching that standard, it not only would disregard the basic and historic power of the states to prescribe their own local court procedures (subject only to a broad constitutional prohibition in the Fourteenth Amendment against the abuse of that power) but it would introduce extraordinary confusion and uncertainty into local criminal procedure where clarity and certainty are the primary essentials of law and order.

### PRACTICE IN ILLINOIS COURTS.

The precise question here is whether the sentences in the two Illinois cases before us violated the Fourteenth Amendment. The Supreme Court of Illinois has affirmed both sentences, *supra,* 396 Ill. 588, 72 N. E. 2d 813. It has thus conclusively established their compliance with Illinois law. While such a finding of compliance with local law is not necessarily sufficient to satisfy the requirements of due process under the Fourteenth Amendment, we shall be helped, in measuring the compliance of these judgments with such due process, if we note exactly the requirements of Illinois law with which the Supreme Court of that State has found compliance.

The material Sections of the Illinois Constitution have been quoted. Illinois Constitution of 1870, Art. II, §§ 2 and 9, *supra.* They provided that no person should be deprived of life, liberty or property, without due process

states "in which the requirement of counsel for indigent defendants in non-capital cases has been affirmatively rejected: . . . ." *Id.* at pp. 477–480. For the instant cases, the important point is that this tabulation shows that only 35 states required the appointment of counsel for indigent defendants in noncapital cases, *even upon the accused's request for such appointment.* No such request was present here.

of law and that, in all criminal prosecutions, the accused had the right to appear and defend in person and by counsel. The statutes of Illinois in effect in 1938 contained the following requirements as to the allowance and assignment of counsel to a person charged with crime and differentiated between the procedure required in a capital case and that required in other cases:

> "Every person charged with crime shall be allowed counsel, and when he shall state upon oath that he is unable to procure counsel, the court shall assign him competent counsel, who shall conduct his defense. In all cases counsel shall have access to persons confined, and shall have the right to see and consult such persons in private.
>
> "Whenever it shall appear to the court that a defendant or defendants indicted in a capital case, is or are indigent and unable to pay counsel for his or her defense, it shall be the duty of the court to appoint one or more competent counsel for said defendant or defendants, . . . ." Ill. Rev. Stat. c. 38, § 730 (1937).

An Illinois statute also provided expressly for cases in which the party accused had pleaded "guilty." The record in the instant cases shows complete compliance with this provision which, in effect, placed upon the trial court primary responsibility for seeing to it that the procedure met all legal requirements, whether of state or federal origin.

> "In cases where the party pleads 'guilty,' such plea shall not be entered until the court shall have fully explained to the accused the consequences of entering such plea; after which, if the party persist in pleading 'guilty,' such plea shall be received and recorded, and the court shall proceed to render judgment and execution thereon, as if he had been found guilty by a jury. In all cases where the court pos-

sesses any discretion as to the extent of the punishment, it shall be the duty of the court to examine witnesses as to the aggravation and mitigation of the offense." Ill. Rev. Stat. c. 38, § 732 (1937).

### PRACTICE IN THE INSTANT CASES.

It is not our province to prescribe which procedure we consider preferable among many permissible procedures which lawfully could be followed by an Illinois or any other state court in connection with counsel for the defense of a party accused of a state crime. It is our province to decide whether the practice of the Illinois court in these cases, although admittedly in conformity with the law of Illinois, was so clearly at variance with procedure constituting "due process of law" under the Fourteenth Amendment that these sentences must be completely invalidated. This brings us to an analysis of the precise facts presented by the records. Each crime was punishable by a mandatory sentence of from one to 20 years in the penitentiary. The charges were stated in simple terms, not ordinarily capable of being misunderstood by a 57-year old man, however elementary or primitive his understanding. There is no claim that this petitioner failed to understand the charges. Before he pleaded guilty, the court "admonished and explained to the said defendant the consequences and penalties, . . ." which would result from his plea of guilty if made. The records then recite, largely in the language of the statute, that "the said defendant still persisting in his desire to enter his plea of guilty to the crime of taking indecent liberties with children, in manner and form as charged in the first count of the indictment herein, the court grants such leave." We do not accept the argument that these records are to be considered unreliable because they are almost exactly in the language of the statute. The important point is not so much that a certain phraseology is

used, as it is that the court actually represented the State at the trial and that the court did what the statute required of it. It cannot be argued, without factual support, that the court failed to do its full duty with an intelligent, competent and understanding appreciation of all of its state and federal obligations. In the light of all the circumstances which must have been obvious to the judge presiding in the courtroom, but are incapable of reproduction here, the court granted leave to the petitioner to enter his plea of guilty in each case. Before sentence was passed, the record shows that the State's attorney and the petitioner, in his own proper person, came before the court and the petitioner "not saying anything further why the judgment of the Court should not now be pronounced . . ." the court pronounced, in each case, the mandatory sentence for the crime to which the petitioner had pleaded guilty. On the facts thus before us in these records, which must be our sole guides in these cases, there is no good reason to doubt either the due process or the propriety of the procedure followed by the trial court. There is nothing in the records on which to base a claim that the petitioner's conduct did not fit the charges made against him. There is nothing in them on which to base a claim of abnormality, intoxication, or insanity on the part of the petitioner or on which to base a claim that there was any indignation, prejudice or emotional influence affecting the conduct or thought of anyone connected with these trials. The presence of the judge, the State's attorney, and the petitioner, together with a natural wish on the part of the petitioner not to expand upon the shame of these crimes, provide no ground for a conclusion that there has been any failure, much less any constitutional failure, of fair judicial process. Doubts should be resolved in favor of the integrity, competence and proper performance of their official duties by the judge and the State's attorney.

They were state officials lawfully chosen to discharge serious public responsibilities under their oaths of office. Especially in a self-governing state and nation, governmental stability depends upon the giving of full faith and credit in form, substance and spirit to public acts, records and judicial proceedings not only among the states but among individuals and between their State and Federal Governments.

Although the records disclose no affirmative basis for invalidating the sentences, it is suggested that an error of omission appears in the failure of the records to show either the presence of counsel for the accused, or an inquiry by the court as to counsel for the accused, or the appointment of counsel by the court to assist the accused. Here also if any presumption is to be indulged it should be one of regularity rather than that of irregularity. Eight years after the trial, in the complete absence of any showing to the contrary, such a presumption of regularity indicates that the court constitutionally discharged, rather than unconstitutionally disregarded, its state and federal duties to the petitioner, including those relating to his right, if any, to the assistance of counsel. *People* v. *Fuhs,* 390 Ill. 67, 60 N. E. 2d 205. It is not necessary, however, for us to depend upon such a presumption.

In the light of the affirmance of the instant judgments by the Supreme Court of Illinois and in the absence of evidence to the contrary, it is clear that the trial court at least did not violate any express requirements of any state statutes calling for affirmative action by the court. *People* v. *Russell,* 394 Ill. 192, 67 N. E. 2d 895; *People* v. *Stack,* 391 Ill. 15, 62 N. E. 2d 807; *People* v. *Fuhs, supra; People* v. *Braner,* 389 Ill. 190, 58 N. E. 2d 869; *People* v. *Corrie,* 387 Ill. 587, 56 N. E. 2d 767; *People* v. *Corbett,* 387 Ill. 41, 55 N. E. 2d 74; *People* v. *Childers,* 386 Ill. 312, 53 N. E. 2d 878. In view of the statutory requirements previously quoted (Ill. Rev. Stat. c. 38,

§ 730 (1937)), the silence of the records affords adequate ground for the minimum conclusions that the petitioner did not request counsel and did not, under oath, state that he, the petitioner, was "unable to procure counsel." In fact, the petitioner does not now claim that he did either of those things. The issue is, therefore, whether, in the absence of any request by the petitioner for counsel and, in the absence of any statement under oath by the petitioner that he was unable to procure counsel, the court violated due process of law under the Fourteenth Amendment by the procedure which it took and which accorded with the procedure approved by Illinois for noncapital cases such as these. This procedure called upon the court to use its own judgment in the light of the nature of the offenses, the age, appearance, conduct and statements of the petitioner in court. These circumstances included the petitioner's plea of guilty, persisted in after the court's admonishment of him and explanation to him of the consequences and penalties involved in his plea. The court thereupon granted leave to the petitioner to enter a plea of guilty and such a plea was entered by the petitioner in each case.

In this view of the two cases before us it is not necessary to consider whether the petitioner, by his plea of guilty or otherwise, affirmatively waived any right to the assistance of counsel in his defense, for, under these circumstances, no constitutional right to such assistance had arisen in his favor. Under the procedure followed by the trial court, there was no affirmative duty upon it, either of state or federal origin, to do more than it did. In the present cases the state statute allowed the petitioner to be represented by counsel if the petitioner desired to be so represented. The state statute and practice, however, did not require that the accused must be so represented or that the trial court must initiate inquiry into the petitioner's desires. The statute did require that the court

must assign counsel to conduct the defense for the accused if the accused stated under oath that he was unable to procure counsel. There is nothing in these records, however, either under oath or otherwise, to show that the petitioner, at the time of trial, either desired counsel or was unable to procure counsel.

The final question is therefore, whether, even in the absence of any state requirement to that effect, the provision requiring due process of law under the Fourteenth Amendment, in and of itself, required the court in these cases to initiate an inquiry into the desire of the accused to be represented by counsel, to inquire into the ability of the accused to procure counsel or, in the event of the inability of the accused to procure counsel, to assign competent counsel to the accused to conduct his defense. We recognize that, if these charges had been capital charges, the court would have been required, both by the state statute and the decisions of this Court interpreting the Fourteenth Amendment, to take some such steps.

These, however, were not capital charges. They were charges of the commission of two elementary offenses, carrying mandatory sentences of from one to 20. years each. We have considered the special circumstances as shown by these records. We do not find in them adequate ground for concluding that the state court, by failing to take the affirmative procedure suggested, violated due process of law under the Fourteenth Amendment. In reaching this conclusion it is not necessary for us to rely upon the statutory procedure of Illinois. It is appropriate, however, for us to consider the Illinois statutes and practice, as well as the statutes and practices of other states, as indicative that, in the judgment of the people of many of the states, it is not necessary to require further assurance of assistance of counsel to conduct the defense of a person accused of crimes of this character and under these circumstances.

It is established that it is permissible and well within "due process of law" for a person, accused of such crimes, to waive his rights, if any, to the assistance of counsel for his defense, whether or not the accused also shall plead guilty.[22] If such waiver is to be effective, it must be intelligently, competently, understandingly and voluntarily made. In the instant cases, the only evidence before us of any affirmative waiver of a right to the assistance of counsel, if any such right existed, appears in the petitioner's pleas of guilty. There was, however, no need in these cases for a waiver by the petitioner of additional action by the trial court because the petitioner had no state or federal right to such action. Consequently, it is not necessary to inquire into the effectiveness of the petitioner's pleas as amounting to waivers of counsel, as well as admissions of guilt.

It may be that the state laws of some other states would have required affirmative inquiries to have been made by the court. It may be that, some day, all of the states will have adopted practices corresponding to the new rule in the federal courts[23] or to the recommendations of the American Law Institute, *supra*. However, as the matter now stands, the states have substantial discretion to determine, in the light of their respective histories and needs, many practices in their criminal procedure, including this practice.

The issue in the instant cases is only whether or not the action taken by the state court violated the Fourteenth Amendment. In answering that question in the

---

[22] *Carter* v. *Illinois*, 329 U. S. 173, 174–175; *Rice* v. *Olson*, 324 U. S. 786, 788–789; *Adams* v. *United States ex rel. McCann*, 317 U. S. 269, 276–279; *Walker* v. *Johnston*, 312 U. S. 275, 286; *Johnson* v. *Zerbst*, 304 U. S. 458, 464, 467–469. See The Right to Benefit of Counsel Under the Federal Constitution, 42 Col. L. Rev. 271, 277–280 (1942).

[23] See note 17, *supra*.

negative, this opinion follows the principles which have been announced by this Court in passing upon somewhat similar issues where the accused has been tried in a state court for a noncapital offense and where complaint has been made that there was violation of due process of law under the Fourteenth Amendment. Recently, this Court said that, although failure to assign counsel to assist an accused in his defense in a federal court for a noncapital crime might violate the express provisions of the Sixth Amendment, that did not mean that a like failure to do so in an Illinois prosecution for the noncapital felony of burglary would violate due process of law under the Fourteenth Amendment. *Foster* v. *Illinois,* 332 U. S. 134. A comparable conclusion has been reached under the Fifth and Fourteenth Amendments as to self-incrimination by a defendant in a criminal case, particularly in relation to the right of counsel for the state to comment on the defendant's failure to testify. *Adamson* v. *California,* 332 U. S. 46. Refusal by a Maryland court to appoint counsel requested by the accused to assist him in his defense against a charge of commission of the noncapital felony of robbery was held not to violate the Fourteenth Amendment. *Betts* v. *Brady,* 316 U. S. 455. In that case the commission or nature of the offense charged was not the issue because the defense was merely that of an alibi.

On the other hand, this Court repeatedly has held that failure to appoint counsel to assist a defendant or to give a fair opportunity to the defendant's counsel to assist him in his defense where charged with a capital crime is a violation of due process of law under the Fourteenth Amendment. *Carter* v. *Illinois,* 329 U. S. 173; *Hawk* v. *Olson,* 326 U. S. 271; *Tomkins* v. *Missouri,* 323 U. S. 485; *Williams* v. *Kaiser,* 323 U. S. 471; *Powell* v. *Alabama,* 287 U. S. 45; *Moore* v. *Dempsey,* 261 U. S. 86. See also, *De Meerleer* v. *Michigan,* 329 U. S. 663 (con-

victed of first degree murder and sentenced to life imprisonment).

In a noncapital state felony case, this Court has recognized the constitutional right of the accused to the assistance of counsel for his defense when there are special circumstances showing that, otherwise, the defendant would not enjoy that fair notice and adequate hearing which constitute the foundation of due process of law in the trial of any criminal charge. *Rice* v. *Olson,* 324 U. S. 786. In that case the immediate issue was one of waiver, but the underlying question involved a charge of burglary against an ignorant Indian, coupled with a complex legal issue arising from the claim that the crime was committed on an Indian reservation. For discussions bearing on the absence of due process resulting from the inability of the defendant, intelligently and competently, either to plead guilty or to defend himself in certain noncapital cases see *Foster* v. *Illinois,* 332 U. S. 134, 137–138; *Canizio* v. *New York,* 327 U. S. 82, 84–85 (robbery in the first degree); *House* v. *Mayo,* 324 U. S. 42, 45–46 (burglary); *Smith* v. *O'Grady,* 312 U. S. 329, 332–334 (burglary); *Powell* v. *Alabama,* 287 U. S. 45, 70 (dictum as to deportation cases).

For the foregoing reasons, and under the principles previously announced by this Court, the judgment of the Supreme Court of Illinois is

*Affirmed.*

Mr. Justice Douglas, with whom Mr. Justice Black, Mr. Justice Murphy and Mr. Justice Rutledge concur, dissenting.

In considering cases like this and the ill-starred decision in *Betts* v. *Brady,*[1] 316 U. S. 455, we should ask ourselves

---

[1] *Betts* v. *Brady* was decided June 1, 1942. Benjamin V. Cohen and Erwin N. Griswold, writing in the New York Times, August 2, 1942, stated:

"Most Americans—lawyers and laymen alike—before the decision

this question: Of what value is the constitutional guaranty of a fair trial if an accused does not have counsel to advise and defend him?

The Framers deemed the right of counsel indispensable, for they wrote into the Sixth Amendment that in all criminal prosecutions the accused "shall enjoy the right . . . to have the Assistance of Counsel for his defence." Hence, if this case had been tried in the federal court, appointment of counsel would have been mandatory, even though Bute did not request it. See *Johnson* v. *Zerbst,* 304 U. S. 458, 463. I do not think the constitutional standards of fairness depend on what court an accused is in. I think that the Bill of Rights is applicable to all courts at all times. MR. JUSTICE BLACK demonstrated in his dissent in *Adamson* v. *California,* 332 U. S. 46, 68, 71, that a chief purpose of the Fourteenth Amendment was to protect the safeguards of the Bill of Rights against invasion by the states. If due process as defined in the Bill of Rights requires appointment of counsel to represent defendants in federal prosecutions, due process demands that the same be done in state prosecutions. The basic requirements for fair trials are those which the Framers deemed so important to procedural due process that they wrote them into the Bill of Rights and thus made it impos-

---

in Betts v. Brady would have thought that the right of the accused to counsel in a serious criminal case was unquestionably a part of our own Bill of Rights. Certainly the majority of the Supreme Court which rendered the decision in Betts v. Brady would not wish their decision to be used to discredit the significance of that right and the importance of its observance.

"Yet at a critical period in world history, Betts v. Brady dangerously tilts the scales against the safeguarding of one of the most precious rights of man. For in a free world no man should be condemned to penal servitude for years without having the right to counsel to defend him. The right to counsel, for the poor as well as the rich, is an indispensable safeguard of freedom and justice under law."

sible for either legislatures or courts to tinker with them. I fail to see why it is due process to deny an accused the benefit of counsel in a state court when by constitutional standards that benefit could not be withheld from him in a federal court.

But if we take the view more hostile to the rights of the individual and assume that procedural due process guaranteed by the Fourteenth Amendment provides lesser safeguards than those of the Bill of Rights, the result should be the same. Then the question is whether the appointment of counsel for Bute was required "by natural, inherent, and fundamental principles of fairness." *Betts* v. *Brady, supra,* p. 464.

Illinois allows counsel to everyone charged with crime. To obtain counsel, however, the accused has to ask for one and also to state upon oath that he is unable to procure counsel.[2] *People* v. *Van Horn,* 396 Ill. 496, 498, 72 N. E. 2d 187, 188. But, as held by the Illinois Supreme Court in the present case, the court need not advise him of his right to counsel.[3] The Illinois rule apparently proceeds from the premise that the average person knows of his right to counsel and resorts to an attorney in case he gets caught in the toils of the law. That view, if logically applied, would not require appointment of counsel in any case—capital or otherwise. For a man charged

---

[2] "Every person charged with crime shall be allowed counsel, and when he shall state upon oath that he is unable to procure counsel, the court shall assign him competent counsel, who shall conduct his defense. In all cases counsel shall have access to persons confined, and shall have the right to see and consult such persons in private.

"Whenever it shall appear to the court that a defendant or defendants indicted in a capital case, is or are indigent and unable to pay counsel for his or her defense, it shall be the duty of the court to appoint one or more competent counsel for said defendant or defendants, . . . ." Ill. Rev. Stat. c. 38, § 730 (1937).

[3] For a summary of the Illinois cases, see the dissenting opinion of Mr. Justice Rutledge in *Foster* v. *Illinois,* 332 U. S. 134, 143–144.

with murder usually knows whether or not it was his blow or shot that killed the deceased and therefore whether he is unjustly accused. And he certainly knows he is in serious trouble when he is faced with such a charge. The logic of the Illinois view would lead to the conclusion that the average man in those circumstances would know enough to demand a lawyer to defend him and that the court need not offer one to him.

Fortunately for the liberal tradition the law has followed a different course. At least where the offense charged is a capital one, due process requires appointment of counsel in state as well as in federal prosecutions. *Powell* v. *Alabama,* 287 U. S. 45; *Williams* v. *Kaiser,* 323 U. S. 471; *De Meerleer* v. *Michigan,* 329 U. S. 663. The reason is that the guilty as well as the innocent are entitled to a fair trial, that a layman without the experience and skill of counsel to guide him may get lost in the intricacies of the law and lose advantages which it extends to every accused, that without expert appraisal of the circumstances surrounding his arrest, detention, arraignment, and conviction the penalties he suffers may be aggravated by his own ignorance or by overreaching of the prosecution or police.[4]  Hence the need for counsel

---

[4] The classic statement is that of Mr. Justice Sutherland in *Powell* v. *Alabama, supra,* pp. 68–69:

"The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the pro-

exists in capital cases whether the accused contests the charge against him or pleads guilty. *Foster* v. *Illinois,* 332 U. S. 134, 137.

Those considerations are equally germane though liberty rather than life hangs in the balance. Certainly due process shows no less solicitude for liberty than for life. A man facing a prison term may, indeed, have as much at stake as life itself.

Bute was charged with a most repulsive crime. It may seem easy to say that it is a simple and uncomplicated one, and therefore that he should know whether he committed it and whether he stood in need of counsel. But it has long been recognized that the charge of taking indecent liberties with a child is, like rape, "an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, tho never so innocent." 1 Hale's Pleas of the Crown 634. As stated by the Illinois Supreme Court in *People* v. *Freeman,* 244 Ill. 590, 594, 91 N. E. 708, 709–710, "Public indignation is even more apt to be aroused in prosecutions for crimes of this kind against children than when the charge is brought by an adult." Certainly the appraisal of such imponderables, the weight of the prosecution's case, the character of the defense which is available [5] are all questions which only a skilled lawyer can consider intelligently. A layman might rush to confession where counsel would see advantages in a trial before judge or jury. Counsel might see weakness in the prosecution's case which could be

ceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect."

[5] The specific intent which is an ingredient of this offense may be disproved by a showing of intoxication (*People* v. *Klemann,* 383 Ill. 236, 48 N. E. 2d 957) or insanity. Ill. Rev. Stat. (1937) c. 38, §§ 590, 592.

utilized either in standing trial or in pleading guilty to a lesser offense. These are the circumstances of the present case which Bute uses to appeal to our conscience. They without more convince me that we could be sure Bute had a fair trial only if counsel had stood at his side and guided him across the treacherous ground he had to traverse.

*Betts* v. *Brady, supra,* holds that we must determine case by case, rather than by the Sixth Amendment, whether an accused is entitled to counsel. A man who suffers up to 20 years in prison as a penalty is undergoing one of the most serious of all punishments. It might not be nonsense to draw the *Betts* v. *Brady* line somewhere between that case and the case of one charged with violation of a parking ordinance, and to say the accused is entitled to counsel in the former but not in the latter. But to draw the line between this case and cases where the maximum penalty is death is to make a distinction which makes no sense in terms of the absence or presence of *need* for counsel. Yet it is the *need* for counsel that establishes the real standard for determining whether the lack of counsel rendered the trial unfair. And the need for counsel, even by *Betts* v. *Brady* standards, is not determined by the complexities of the individual case or the ability of the particular person who stands as an accused before the court. That need is measured by the *nature* of the *charge* and the *ability* of the *average* man to face it alone, unaided by an expert in the law. As *Powell* v. *Alabama, supra,* indicates, the need for counsel in capital cases is great even though the defendant is an intelligent and educated layman. The need is equally as great when one stands accused of the serious charge confronting Bute.