28 N.J. Super. 557 (1953)
101 A.2d 112
DE SAMUEL SIMS, PLAINTIFF.
v.
D. KNOWLTON READ, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided December 10, 1953.
*559 Mr. Abram A. Golden for plaintiff.
Mr. Melvin P. Antell, Assistant Prosecutor of Essex County, for defendant.
HUGHES, J.S.C.
Despite its caption, the above-entitled action is an application for writ of habeas corpus on the part of petitioner, De Samuel Sims, presently confined in the *560 Essex County Penitentiary. The writ was issued and a full hearing granted on the allegations of his petition that, in connection with sentences now being served by him, there had been such violation of his legal and constitutional rights as to oust the court of jurisdiction, invalidate the sentences imposed and entitle him to immediate release from confinement. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Uveges v. Com. of Pennsylvania, 335 U.S. 437, 69 S.Ct. 184, 93 L.Ed. 127 (1948); Ex parte Carter, 14 N.J. Super. 591 (Cty. Ct. 1951); State v. Cynkowski, 10 N.J. 571 (1952).
Petitioner, now aged 28, is a grammar and high school graduate and although he has worked as a common laborer, has demonstrated to the trial court in this case a degree of sophistication and intelligence which the court has taken into consideration in its assessment of the factors which he urges to invalidate his sentences. In 1948 he began to use narcotics, beginning with marihuana and later becoming addicted to the use of heroin. On March 24, 1949, he was arrested for use of narcotics and was placed on a one-year probation term, conditioned upon voluntary treatment at the federal institution for narcotic addicts at Lexington, Kentucky. On the basis of a psychiatric opinion questioning the fact of his true addiction, the court apparently rescinded this condition and he was not required to undergo such treatment. Several months later he resumed the use of heroin. On July 5, 1950 he became despondent, attempted suicide by inhaling illuminating gas, and was treated at the hospital for a short period. About a month later he resumed the use of heroin. In February 1951 he was charged with receiving stolen goods and was held for action of the grand jury, and in March 1951 was released on bail. On May 3, 1951 he retracted a not guilty plea on this charge, which is identified by Docket No. 53125, and on May 9, 1951 the appropriate court in Essex County suspended sentence on such charge. Meanwhile, on April 20, 1951 petitioner appeared, apparently on a waiver, before the municipal court in Newark and was sentenced to one year in the Essex *561 County Penitentiary on a larceny charge. According to the records of the Essex County Penitentiary, this sentence was served in ten months (due to appropriate credits and remittances of time) and expired on February 20, 1952.
On April 16, 1951 petitioner had been arrested as a disorderly person in Montclair, in Essex County, and apparently on April 22, 1951, appearing before the municipal court thereof, was sentenced to serve six months in the Essex County Penitentiary on such charge of disorderly conduct. According to the records of the Essex County Penitentiary, this sentence was served by him in five months (due to appropriate credits and remittances of time), running from February 20, 1952 (the expiration date of the sentence imposed in the municipal court in Newark, supra) and expiring on July 20, 1952.
On April 22, 1951, petitioner arrived in the Newark Street Jail under charges pending against him, which later crystallized into Accusations Nos. 53234 and 53235 of the 1950 term of the Essex County grand jury. On April 23, 1951 he signed waivers and requests for disposition of his case without indictment and trial by jury (referred to under the previous practice as "Special Sessions" in the testimony), both of these charges involving accusations for grand larceny, and on April 30 he entered non vult pleas in open court on Accusations Nos. 53234 and 53235. On May 9, 1951 he appeared before the appropriate Judge of the Essex County Court and on Accusation No. 53234 he was sentenced to serve 18 months in the Essex County Penitentiary, the record apparently providing that such terms should be served "consecutive to term now being served," or words to such effect, the substance thereof being the same. On Accusation 53235, on such date of May 9, 1951, he was sentenced to 18 months in the Essex County Penitentiary, the judge ordering that such sentence should run consecutive to that imposed on Accusation No. 53234, as well as consecutive to the term then being served. The authorities at the Essex County Penitentiary have apparently indicated in their records that the first of these terms commenced being served *562 on July 20, 1952, the expiration date of the sentence imposed by Judge Brunetto in Montclair. Petitioner is apparently serving either this sentence or approximately commencing service of the sentence imposed on Accusation 53235, the technical difference in such posture being immaterial.
With particular reference to the waivers of indictment and trial by jury and pleas of non vult entered on Accusations 53234 and 53235, the petitioner produces evidence that when such procedural steps were taken he was in the throes of "withdrawal" pains due to cessation, on April 16, 1951, of the substantial dosages of heroin which he had been using up until that date; that the nervous and physical reactions of such illness deprived him essentially of his ability to reason and to exercise his full concentration upon the surrender of the constitutional rights implicit in such waivers and pleas; that the court did not apprize him of his right to be represented by counsel under the Constitutions of the United States and of New Jersey and under the specific court rule then in effect (Rule 2:12-1). When our new rules of court were adopted in 1948, they embodied an express provision requiring the court to advise a defendant who appears in court without counsel of his right to counsel and to assign counsel, unless he elects to proceed without counsel or is able to obtain counsel. State v. Gladstone, 17 N.J. Super. 467 (App. Div. 1952); State v. Cynkowski, supra. This principle has been carried into the revised rules (R.R. 1:12-9 (a)).
I am of the opinion that while this rule should be complied with strictly, it is directory in nature and not jurisdictional per se, and failure of compliance therewith, as exhibited in the instant case, will not, in and of itself, invalidate convictions imposed upon defendants appearing without counsel. In the instant case the transcript indicates that upon arraignment the assistant prosecutor addressed the defendant as follows: "You don't want the court to assign counsel to represent you?," and to this the petitioner replied "No sir." This colloquy is not, in my opinion, a compliance with the rule of court because it in no sense fulfills *563 the obligation imposed by these words of the rule, "* * * the court shall advise him of his right to counsel * * *," and further, it is in no sense the intelligent election which is imported by the obligation placed upon the judge to "* * * assign counsel to represent him at the trial unless he elects to proceed without counsel or is able to obtain counsel." For a violation of this rule to amount to a jurisdictional defect invalidating convictions placed upon pleas entered contemporaneously therewith, there must appear the elements which are spoken of in cases where denial of counsel has been held to be a violation of the Fourteenth Amendment to the Constitution of the United States. Moreover, this rule has the effect, if such effect be needed, of indicating that the Fourteenth Amendment protection embraces most importantly the right to assistance of counsel.
The petitioner's proofs, in my opinion, fall far short of a showing that he has been deprived of his right of due process under the Fourteenth Amendment to the Constitution of the United States. The United States Supreme Court has held that a state conviction in a non-capital case is not invalidated under the Fourteenth Amendment by a showing, without more, that it was entered pursuant to a plea of guilty made without counsel or affirmative advice of the right thereto. Foster v. People of State of Illinois, 332 U.S. 134, 67 S.Ct. 1716, 91 L.Ed. 1955 (1947); Bute v. People of State of Illinois, 333 U.S. 640, 68 S.Ct. 763, 92 L.Ed. 986 (1948).
In determining whether the imposition of sentence upon this petitioner without counsel represented such a clear and drastic deprivation of constitutional right as to affect the jurisdiction of the court (Uveges v. Com. of Pennsylvania, supra; Ex parte Carter, supra), it is my opinion that he was not so deprived of his constitutional right. As stated, he was court-wise and sophisticated; he had been assigned eminent and experienced counsel in connection with the receiving stolen goods case, No. 53125, supra, by Judge Conlon in the Essex County Court on February 21, 1951, *564 and this counsel conferred with petitioner in jail on February 25, 1951 and on March 7 or 8, 1951. The petitioner was released on bail in this case, as stated, on March 9 or 10, 1951, and on April 26, 1951, several days after the re-arrest of the petitioner, as stated above, the same counsel, Mr. Francis Hayden, again conferred with the petitioner in the Newark Street Jail, the discussion being limited to the receiving charge. This discussion was had, then, during the period when the plaintiff asserts he was in such severe distress by the deprivation of heroin that he was unable to make full use of his reason and such conference, and access to counsel previously appointed by the court, although on another charge, thus occurred three days after petitioner had signed the waivers of his rights to indictment and jury trial and four days before he appeared in court to enter pleas of non vult thereon. Under all of the evidence, I conclude and determine that the petitioner has not fulfilled the rather formidable burden of proving that he was in such a state of mental collapse and, therefore, so vulnerable as to entitle him to an invalidation of the pleas of non vult and the sentence based thereon.
The hearing, however, developed that further errors have occurred, which, although they do not entitle the petitioner to immediate release since, as stated, he is serving either one or the other of the valid sentences imposed in the Essex County Court on May 9, 1951, should in conscience be called to the attention of the attorney for the petitioner and of the county prosecutor. Upon the imposition of the first sentence relevantly involved in this case, namely, that imposed on April 20, 1951 by the Municipal Court of Newark, such sentence began to run immediately, as is properly indicated by the records of the Essex County Penitentiary. Upon the imposition of sentence by the municipal judge at Montclair on April 23, 1951 for six months, such sentence began to run immediately and thus ran concurrently with the sentence imposed in the Newark Municipal Court under the principle established in the cases of In re Benton, 10 N.J. Super. 595 (Cty. Ct. 1950); Ex *565 Parte Fitzpatrick, 9 N.J. Super. 511 (Cty. Ct. 1950), affirmed 14 N.J. Super. 213 (1951); cf. In re Kershner, 9 N.J. 471 (1952).
Consequently, both of such sentences would have expired by February 20, 1952. Similarly, it would appear that upon the imposition on May 9, 1951 of the consecutive terms imposed by the late Judge Naughright on Accusations Nos. 53234 and 53235, his proviso that such sentences should run consecutive to each other and to the term or terms then being served had no reference to a mistaken accumulation of terms "then being served," but to the terms then being served concurrently and which were destined to expire, in contemplation of law, on February 20, 1952. It appears that the terms are not thus being treated, but on the contrary that the Essex County Penitentiary authorities have recorded that the first of the two sentences imposed by Judge Naughright began on July 20, 1952. Although not called upon to decide the same, I suggest the impropriety of this view to counsel, since it is as much to the interest of the prosecutor to see that these terms are properly served, as it is to the interest of the petitioner; I have no doubt that the prosecuting authority will undertake an investigation to rectify such sentences or will take appropriate steps when the time arrives when the petitioner, at the expiration of the last of the valid sentences imposed by Judge Naughright on May 9, 1951, again petitions the court for release on habeas corpus.
For the above reasons, the court hereby dismisses the writ of habeas corpus and remands the prisoner to the custody of the Warden of the Essex County Penitentiary, without prejudice to his right again to make application for writ of habeas corpus at the time when such is deemed appropriate.