32 N.J. Super. 465 (1954)
108 A.2d 494
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH P. ALMOND, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 14, 1954.
Decided October 20, 1954.
*466 Before Judges EASTWOOD, GOLDMANN and SCHETTINO.
Mr. Lewis P. Scott, Atlantic County Prosecutor, for the State (Mr. David R. Brone, First Assistant Prosecutor, on the brief).
Mr. Joseph P. Almond, pro se.
GOLDMANN, J.A.D.
This is an appeal from an order of the Law Division denying defendant's application for a writ of habeas corpus. He was given leave to appeal in forma pauperis.
Defendant was arrested in Atlantic City on December 9, 1951 on two charges of robbery and was held for the grand jury. While in the county jail he signed waivers of indictment and trial by jury. Formal accusations were then filed on January 2, on which date he was brought before the court and pleaded guilty. He was subsequently sentenced to State Prison for a term of from 8 to 12 years on each of the two accusations for robbery, the sentences to run concurrently but to start after he had served the balance of an Annandale Reformatory parole sentence.
*467 Defendant applied to the Law Division on January 28, 1954 for a writ of habeas corpus. Neither party has supplied us with a copy of the original petition. However, it is apparent from the conclusions filed by the Law Division judge that defendant alleged he had requested counsel while in the county jail and had been advised by the under sheriff that counsel would be provided "if and when he signed the waivers of indictment and trial by jury"; that counsel had not been assigned him, he did not have the assistance of counsel at either the time of plea or sentence, and neither the court nor the prosecutor had advised him of his right to counsel. Upon receipt of the application, the Law Division judge referred the matter to the chairman of the Atlantic County Habeas Corpus Advisory Committee for investigation and report. The committee assigned a local attorney who submitted his report to the judge on March 31, 1954. In summary the attorney reported:
1. The under sheriff had told him that the prisoner's representations were untrue  he had asked Almond if he wanted the assistance of counsel and Almond stated he did not want to be represented, was guilty and desired to sign waivers. The report goes on to say that the under sheriff "is personally known to me and I believe him to be a man of integrity and find it difficult to believe that he would make representations to a prisoner and then not keep any promises so made." The prisoner's charges against the under sheriff are characterized as "not worthy of belief."
2. Examination of the transcript of the January 2 and 14, 1952 proceedings shows that the prisoner had readily admitted his guilt when he appeared to plea; and on sentence day, when the court asked Almond, "What caused this proposition of getting a gun and holding up two places?", defendant replied, "I can't explain it, Your Honor."
3. The report concludes: "No useful purpose would be served in granting a writ in the instant case," for it is settled that "the writ will not be granted unless it appears that an injustice was done and there is a doubt as to the defendant's guilt." Defendant "does not insist upon his innocence of the charges against him," but merely states that he explained to the under sheriff that "there were meritorious points in his case that warranted adjudication which if brought to the attention of the Court would warrant leniency, or perhaps dismissal." This statement is characterized as "obviously evasive and does not in my judgment assert his innocence in such manner as would indicate that an injustice had been done him."
*468 The order denying Almond's application for a writ of habeas corpus was entered April 19, 1954. It followed upon the written conclusions filed on April 10, 1954, reciting defendant's charge of unlawful deprivation of counsel and noting that the record is devoid of any reference to counsel having been appointed to represent the prisoner, or of any request for counsel on his part. After referring to the report of the investigating attorney, the judge notes that after defendant pleaded guilty the prosecutor announced he was ready to proceed with the trial of one, Fairfield, who had participated in one of the robberies with Almond; that when Fairfield pleaded not guilty the prosecutor suggested that an attorney should be appointed to represent him, and the court then announced it would do so. The Fairfield colloquy had taken place in the presence of defendant after he had pleaded guilty; the judge refers to it to show that Almond "had the opportunity to speak up before the court and request counsel if he desired to be represented," and so "it is evident that he could not possibly have been ignorant of his right to have counsel appointed to represent him if he so desired." The Law Division judge concluded that in the circumstances there was nothing so fundamentally unfair or shocking to the sense of justice as to require the issuance of the writ.
R.R. 1:12-9 (formerly Rule 2:12-1) requires that:
"(a) Where a person charged with crime appears in any court, without counsel, the court shall advise him of his right to counsel and assign counsel to represent him at the trial unless he elects to proceed without counsel or is able to obtain counsel."
This rule should be complied with strictly. The State admits that the trial court did not follow out the express direction of the rule. There is nothing in the record to show that defendant was able to obtain representation or understandingly elected to proceed without counsel.
The State, in seeking to uphold the order denying the writ, stresses that the conclusions of the Law Division judge reflect the unbiased findings of the member of the Atlantic County bar assigned to investigate and report upon the application.
*469 It is stressed that the report demonstrates that defendant's charge of having been misled or deprived of counsel by the under sheriff's unfulfilled promise is entirely unsupported and appears to be a complete fabrication.
The court, in referring defendant's application to the Atlantic County Habeas Corpus Advisory Committee, did so pursuant to R.R. 1:12-9(d):
"(d) Where an indigent person convicted of crime desires to take an appeal, or to institute proceedings to correct an illegal sentence or for a writ of habeas corpus, the trial court or the appellate court on his application and on a showing of reasonable doubt may assign an attorney or counsellor-at-law, as may be appropriate, to represent him. Assignments for these purposes and for the purpose of having preliminary reviews made to determine the existence of reasonable doubt may be made from Habeas Corpus Advisory Committees organized by the Junior Section of the State Bar Association."
It is to be noted that the assignment is to be made by the court from the advisory committee that has been organized, and not by the committee itself, as seems to have happened here. As stated by the rule, one of the purposes of an assignment is to have a preliminary review made "to determine the existence of reasonable doubt," although the major purpose clearly is to assure representation in a proper case to an indigent person convicted of a crime who desires to appeal, or to institute proceedings to correct an illegal sentence or for a writ of habeas corpus. The report rendered pursuant to such an assignment is merely advisory. It cannot, of course, be a substitute for the court's own and independent review of the facts and circumstances in arriving at a conclusion.
Here the report undertook to give the investigating attorney's personal opinion as to the under sheriff's reliability and that defendant was unworthy of belief; further, that no useful purpose would be served in granting the writ because it appeared there was no doubt as to defendant's guilt and no injustice had been done. The only purpose of assigning the attorney here was for him to determine whether there was a *470 reasonable doubt surrounding defendant's charge of deprivation of counsel  nothing more.
A hearing is not to be denied because the allegations of a petition "are suspected to be the false and improbable products of a cultivated imagination." State v. Lenkowski, 24 N.J. Super. 444, 448 (App. Div. 1953). Defendant's representations, made under oath, upon their face disclose to a prima facie degree that he may have been induced to relinquish his right to a trial by jury and to enter a plea of guilty under circumstances which might render acceptance of the plea fundamentally unfair or offensive to a sense of justice. At the least, counsel would have brought to the attention of the court the meritorious points which defendant claims might have warranted leniency. Almond has not been shown to have been a hardened criminal with a record of many court appearances, or a person of schooling and mature judgment. He stood alone, and in view of his present allegations, should have been advised of his right to counsel and of the court's willingness to assign counsel.
The State relies upon Sims v. Read, 28 N.J. Super. 557, 562 (Law Div. 1953), which held that R.R. 1:12-9(a) is merely "directory in nature and not jurisdictional per se," and failure of compliance therewith, as exhibited in that case, would not, in and of itself, invalidate convictions imposed upon defendants appearing without counsel. The same prosecutor cited the same case to this court in State v. Terry, 30 N.J. Super. 288, 290 (App. Div. 1954). The answer to his argument, as in the Terry case, is that a writ of habeas corpus was actually issued in the Sims case, a hearing held, and the conclusions of the court were founded upon the record of the hearing. That is not our situation.
It may well be that defendant's allegations will be completely disproved at the hearing. However, upon a consideration of all the circumstances, essential justice would better have been served by giving defendant a full hearing. Accordingly, the order of the Law Division is reversed and the matter remanded.