65 N.J. Super. 189 (1961)
167 A.2d 410
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ARTHUR THOMPSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 28, 1960.
Decided January 18, 1961.
*190 Before Judges GOLDMANN, FOLEY and LABRECQUE.
Mr. George H. Bohlinger, Jr., court-assigned counsel, argued the cause for appellant.
Mr. Joseph P. Merlino, Legal Assistant argued the cause for respondent (Mr. Stanley E. Rutkowski, Prosecutor of Mercer County, attorney).
The opinion of the court was delivered by LABRECQUE, J.S.C. (temporarily assigned).
Defendant appealed from a County Court conviction on an indictment charging him with assault upon one Desmond C. Love with intent to rob. N.J.S. 2A:90-2.
At the outset, defendant charges that he was denied the right to have counsel represent him at the trial. The record before us is devoid of any testimonial support of the claim. On the contrary, we are satisfied that the defendant was made fully aware that he was entitled to have counsel assigned by the court to represent him. Notwithstanding this, he knowingly chose to represent himself, for what he *191 thought were good and sufficient reasons. The factual situation which obtains here is in no wise similar to that in State v. Almond, 32 N.J. Super. 465 (App. Div. 1954), where defendant was not advised of his right to counsel and of the court's willingness to assign counsel to him.
It is next contended that the defendant was "denied adequate witnesses for his defense." Through some misunderstanding, defendant had not made any arrangements for the issuance or service of subpoenas on his prospective witnesses. His application for an adjournment was denied by the trial court and he was directed to proceed. While he had none of his witnesses immediately available, some of them were confined to the nearby county jail and he asked that he be permitted to produce eight of them to testify on his behalf. The trial court declined this request, limiting him to two witnesses:
"THE COURT: Now I think you have given me a long list of witnesses that you want, all for the same purpose, and that is to show that you were bruised when you arrived at the jail and that brutality was used against you. I think that if you take two witnesses, that should be sufficient. It's not necessary to be repetitious. Now you could have your choice, two of the best that you have in mind; Mr. Frank Brown?
THE WITNESS: Frank Brown and James Willis.
THE COURT: And, two, James who?
THE WITNESS: James Willis.
THE COURT: James Willis. Now you want to have the benefit of the best two that you can think of. Mr. Brown and Mr. Willis?"
These witnesses were offered both for the purposes stated by the court and for the purpose of contradicting the testimony of Dr. Williams, the county physician who was called by the State.
It is urged that the trial court fell into error in thus limiting the number of defense witnesses. While no objection was made by defendant to this ruling as required by R.R. 1:5-1(a), R.R. 2:5, we cannot blind ourselves to the fact that defendant as a layman would not be expected to *192 know that objections should be noticed for the purpose of appeal. We will, therefore, consider whether the matter constituted plain error under R.R. 1:5-1(a).
One of the principal issues raised at the trial was the admissibility of a typewritten confession signed by defendant some two days after the perpetration of the assault. It was by far the most important link in the evidential chain connecting him with the crime. Desmond Love had testified that he was working in his father's store in Trenton, with his back to the door, someone entered, hit him on the shoulder with what he thought was a rubber hose and said, "This is a holdup." He ran to the other end of the store and the prompt appearance of his father and mother frightened the intruder away. He testified that his assailant was young and colored, and had a lady's stocking over his face. Defendant was picked up a short time later and taken back to the store where he was identified by both Desmond and his father. He was later identified in the police lineup.
In support of the admission of the confession, three witnesses testified: Dr. Thomas M. Williams, medical inspector at the county jail; Detective Donald F. Toft and, later, Patrolman Dean A. Barcalow. Dr. Williams testified, in substance, that he had examined the defendant upon his admission to the county jail, and found no marks on his body. Toft, the detective who took the statement, testified that it was voluntarily given after the usual admonition.
The voluntariness of the confession was vigorously denied by the defendant. He testified that he was intermittently beaten by the police from the time of his arrest on Saturday, December 13, until he signed the confession on Monday morning, December 15. After the confession was admitted into evidence and read to the jury, Patrolman Barcalow, who had both participated in the original arrest and witnessed the confession, denied any brutality and explained that the delay in obtaining it was due to the fact that defendant had had too much to drink. The defendant then offered himself as a witness and testified further concerning his physical *193 mistreatment at the hands of the police mentioning, among other things, that he had been kicked in the kidney two or three times and that he had given a prior confession to the police in which he confessed to offenses which were supposed to have occurred when he had actually been an inmate of the Bordentown Reformatory.
The defendant then asked leave to call his witnesses and was restricted to two of the number who were available. These had been confined to the county jail and had not been present during the trial. They generally corroborated defendant. The first of them testified as to blood being on the defendant's clothes and bruises and marks of violence on his body. He particularly referred to a bruise on the defendant's back near the kidney and to blood being on the defendant's clothes. He further testified that he had never had a thorough physical examination from Dr. Williams while he was confined to the jail. The second of the two witnesses, James Willis, likewise described blood on the prisoner's clothes and bruises on the chest and around the shoulders. At the conclusion of their testimony, the defendant's request to call additional witnesses was again denied.
A consideration of the whole testimony leads to the inescapable inference that the confession played a prominent part in the conviction of the defendant. The identification of the defendant in the police lineup had lost some of its efficacy when it was conceded that he was the only short man and the only light-skinned man in the lineup. The stocking had covered his face during all the time he was allegedly in the store. Thus, the defendant's signed admission of guilt was more or less the keystone of the State's case and any evidence in derogation of it occupied an equally important status.
In State v. Mucci, 25 N.J. 423 (1957), the right of the trial court to restrict within reasonable limits the number of witnesses, as to any one or more points of fact in the case, was confirmed. But in imposing such a restriction here, the court was required to exercise care to avoid any *194 undue intrusion upon the substantial right of the defendant to a fair trial, having in mind the fact that the cumulation of testimony in relation to the substantive issue could well bear upon the ultimate quality and weight of the evidence. ibid.
The action of the court in limiting the defendant to two of his witnesses constituted an abuse of discretion and an undue intrusion upon his right to a fair trial. The limitation was imposed before any of his witnesses had been heard. While he was advised by the court to select his "best" witnesses, it is difficult to conceive how he could have determined this until they had testified. Where the State had called three witnesses as to the voluntariness of the confession, it is likewise difficult to conceive any reason for limiting the defendant to two. The effect of such limitation on the defense can well be surmised. The two witnesses permitted the defendant, and all or most of his remaining witnesses, were fellow prisoners. A jury undoubtedly would be less inclined to credit defendant's testimony in the absence of strong corroboration. The refusal to permit the additional corroborative testimony could well have tipped the scales against the defendant. For these reasons we conclude that the limitation imposed by the judge constituted plain error within the meaning of R.R. 1:5-1(a), requiring reversal.
The conclusions thus reached render unnecessary consideration of the remaining grounds urged for reversal. However, since the case must be retried, we turn to defendant's criticism of the charge below. He first contends that the charge placed the burden of proof as to the voluntariness of the confession upon him. The record fails to substantiate this. The charge clearly imposed the burden of proof upon the State. Moreover, the court did charge that the confession carried no weight if the jury found it to have been forced from the defendant. This was more than the defendant was entitled to as of the date of his trial, April 23, 1959. State v. Smith, 32 N.J. 501 (1960). However, the opinion of the majority of the court in that case now leaves it to *195 the jury to make the ultimate decision as to the voluntariness of the confession after a preliminary hearing and a ruling by the court as to its admissibility.
The defendant next urges that the court failed to charge as to the elements of the crime involved. The court said:
"The charge is simply an assault with intent to rob, if he did, what the storekeepers, father and son, say he did, that [sic] this offense has been committed. There are no technicalities involved. If he is the person and if you are convinced beyond reasonable doubt that he is the person, he is guilty."
This cannot be said to be sufficient compliance with the court's duty of instructing the jury as to the fundamental principles of law controlling the case. State v. Butler, 27 N.J. 560 (1958). A definition of the crime with its essential elements was called for, especially where, as here, the intent to commit a second crime was involved. The court's duty in this regard was not affected by the failure of the defendant to request that it be discharged. Whether in the absence of objection by the defendant such omission constituted plain error requiring reversal, does not require determination at this time, in view of the prospective retrial.
For the reason set forth, the judgment of conviction is reversed and the matter is remanded for a new trial.