*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

WILLIE ALSHAUNA LEE,

        Defendant-Appellant.

UNPUBLISHED
March 11, 2021

No. 348809
Macomb Circuit Court
LC No. 2018-001663-FC

Before: STEPHENS, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of carjacking, MCL 750.529a; second-degree fleeing or eluding a police officer, MCL 257.602a(4); felon in possession of a firearm (felon-in-possession), MCL 750.224f; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b; for which he was sentenced as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of 400 to 700 months in prison for his carjacking, second-degree fleeing or eluding a police officer, and felon-in-possession convictions; and two years' consecutive imprisonment for his felony-firearm conviction. We affirm.

## I. FACTS & PROCEDURAL HISTORY

Defendant approached the victim outside of a gas station while she was getting in her car, pointed a gun at her, and demanded her possessions. The victim threw her recently purchased coffee at defendant, dropped her keys, and fled. Defendant retrieved the keys and drove her car out of the gas station. A high-speed chase ensued with multiple police officers following defendant in the victim's Dodge Magnum. The car chase ended when defendant stopped the Dodge Magnum and ran away on foot. He was eventually tracked down by police officers and tackled in the backyard of a local residence. Because there was a dog in that backyard, defendant's jacket became covered in dog feces. Upon returning back to the police station, defendant's jacket was determined to be a bio-hazard and was destroyed according to police protocol.

At trial, the victim and an officer identified defendant as the assailant in the carjacking and subsequent police chase. The prosecution also introduced evidence of telephone calls defendant made after being arrested, in which he made several inculpatory remarks, including that he was

-1-

only caught because of traffic congestion and police cars being too fast, that he was caught with a gun, that he had coffee thrown at him, and that he jumped fences while fleeing on foot. During an in-person visit that was recorded on video, defendant requested help in establishing a false alibi. The fourth day of trial, during which defendant testified, was not recorded or transcribed for reasons that are not established on the record. Defendant was convicted and sentenced as already noted and this appeal followed.

## II. DESTRUCTION OF DEFENDANT'S JACKET

Defendant argues that his constitutional right to due process was violated by the police's destruction of his jacket, or alternatively, that his trial counsel was ineffective for failing to challenge the issue. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

As to defendant's due-process argument, it is undisputed in this case that "[d]efendant did not preserve this issue by raising it before the trial court[.]" *People v Dickinson*, 321 Mich App 1, 15; 909 NW2d 24 (2017). In the alternative, to preserve an argument regarding ineffective assistance of counsel, defendant was required to "move the trial court for a new trial or a *Ginther*[1] hearing." *People v Jackson (On Reconsideration)*, 313 Mich App 409, 431; 884 NW2d 297 (2015). The record is clear that defendant never moved for a new trial or a *Ginther* hearing, and thus, this issue is unpreserved for this Court's review. *Id.*

This Court generally reviews de novo issues involving due-process claims such as the one brought by defendant in this appeal. *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016). However, because this issue has not been preserved for review, this Court must review the "unpreserved claim for plain error affecting defendant's substantial rights." *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To show that a defendant's substantial rights were affected, there must be "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018) (citation omitted).

As to defendant's alternative argument of ineffective assistance of counsel, "[a]ppellate review of an unpreserved argument of ineffective assistance of counsel, like this one, is limited to mistakes apparent on the record." *People v Johnson*, 315 Mich App 163, 174; 889 NW2d 513 (2016). "The denial of effective assistance of counsel is a mixed question of fact and constitutional law, which are reviewed, respectively, for clear error and de novo." *People v Schrauben*, 314

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Mich App 181, 189; 886 NW2d 173 (2016), quoting *People v Brown*, 279 Mich App 116, 140; 755 NW2d 664 (2008).

## B. LAW AND ANALYSIS

The destruction of defendant's jacket was not an error that resulted in a violation of his due-process rights, and trial counsel was not ineffective for failing to object to the issue.

Defendant argues that his constitutional rights were violated when the police destroyed his jacket before trial in bad faith and without testing it for the presence of coffee stains. Our Supreme Court and this Court have explained that "the United States Supreme Court held . . . 'that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." ' " *Dimambro*, 318 Mich App at 212, quoting *People v Chenault*, 495 Mich 142, 149; 845 NW2d 731 (2014), quoting *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). Notably, however, defendant has not made an argument that *Brady* was violated, likely because he has no proof that the evidence was favorable to him. Defendant instead relies on the constitutional analysis involving "the failure of the State to preserve evidentiary material" that is only "potentially exculpatory . . . ." *Arizona v Youngblood*, 488 US 51, 57-58; 109 S Ct 333; 102 L Ed 2d 281 (1988) (quotation marks and citation omitted).

"In *Youngblood*, [488 US] at 57-58, the United States Supreme Court held that the government's failure to preserve potentially exculpatory evidence violates a criminal defendant's due process rights if the defendant can show bad faith on the part of the government." *People v Antsey*, 476 Mich 436, 460-461; 719 NW2d 579 (2006). Further, in cases involving an allegation of a violation of due-process rights under *Youngblood*, "[d]efendant bears the burden of showing . . . that the police acted in bad faith." *Dickinson*, 321 Mich App at 16 (quotation marks and citation omitted). The United States Supreme Court in *Youngblood*, 488 US at 58, was clear that "the police [do not have] an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." In sum, the Court held "that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.*

In this case, the victim was approached by a man with a gun who demanded her possessions. Instead of handing over her purse, she threw her cup of coffee at her assailant. At trial, she identified the assailant as defendant and testified that he was wearing a jacket. Defendant then took the victim's keys and drove away in her automobile. After a high-speed chase in the car followed by a foot chase through a neighborhood, defendant was tackled and arrested in the backyard of a residence. The backyard in question was at the home of a person who owned a dog. Thus, defendant being tackled by police in that backyard resulted in dog feces becoming imbedded in defendant's jacket. When defendant was taken to the police station, an officer obtained defendant's jacket and put it in a holding area for bio-hazardous materials. The jacket was subsequently destroyed by an outside contractor, as directed by the police.

Officer Maxwell Garbarino and Detective Andrew Wood testified that it was police department policy to destroy bio-hazardous materials that did not have evidentiary value. Detective Wood further testified that the policy indicated that such materials were to be destroyed

-3-

by a company called Elite Trauma. Indeed, Detective Wood obtained a record of defendant's arrest, which showed that the jacket was in fact taken by Elite Trauma and destroyed. Detective Wood testified that the decision was made according to, and did not violate, the police department's policy.

In this appeal, defendant contends that the jacket contained potentially exculpatory evidence. Specifically, defendant argues that if the jacket did not have coffee on it, then it would have indicated to the jury that he had not been the person who carjacked the victim at gunpoint. Defendant infers that the potential evidentiary value of the jacket means that the police must have destroyed it in bad faith. However, defendant has not presented any evidence of alleged bad faith by the police, a burden that he must bear on appeal. *Dickinson*, 321 Mich App at 16. Instead, the only evidence introduced at trial about the jacket's destruction was from Officer Garbarino and Detective Wood, who both testified that the jacket was properly destroyed according to police department policy. In *Dickinson*, 321 Mich App at 17, this Court declined to find bad faith by the police where potentially exculpatory evidence was "disposed [of] . . . according to standard police protocol for processing such evidence." There is nothing on the record to suggest that the same conclusion should not be reached in the present case. The police were not acting in bad faith when they destroyed defendant's dog-feces-covered jacket according to police protocol. *Id*. Because defendant has not shown bad faith, his due-process claim fails.[2]

Defendant alternatively asserts that he is entitled to a new trial because his defense counsel was constitutionally ineffective by failing to object to the destroyed evidence or requesting a jury instruction about it. "Criminal defendants have a right to the effective assistance of counsel under the United States and Michigan Constitutions." *Schrauben*, 314 Mich App at 189-190, citing US Const, Am VI; Const 1963, art 1, § 20. "However, effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *Schrauben*, 314 Mich App at 190. The United States Supreme Court has held that "in order to receive a new trial on the basis of ineffective assistance of counsel, a defendant must establish that 'counsel's representation fell below an objective standard of reasonableness' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012), quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "When reviewing defense counsel's performance, the reviewing court must first objectively 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *Jackson*, 313 Mich App at 431, quoting *Strickland*, 466 US at 690. "Next, the defendant must show that trial counsel's deficient performance prejudiced his defense—in other words, that 'there is a reasonable probability that, but for counsel's unprofessional errors,

---

[2] Defendant only argues that his due-process rights were violated because the police acted in bad faith. Thus, we need not address whether his due-process rights were violated in the absence of bad faith. See *United States v Collins*, 799 F3d 554, 569 (CA 6, 2015) (discussing *Youngblood* and *California v Trombetta*, 467 US 479; 104 S Ct 2528; 81 L Ed 2d 413 (1984) and explaining that *Trombetta* does not require a showing of bad faith in certain cases where the police fail to preserve evidence).

the result of the proceeding would have been different.' " *Jackson*, 313 Mich App at 431, quoting *Vaughn*, 491 Mich at 669.

As discussed in depth above, the police's decision to destroy defendant's jacket did not violate his constitutional right to due process. Thus, even if trial counsel had objected to the evidence or requested a jury instruction about its destruction, those requests would have been denied. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Savage*, 327 Mich App 604, 617; 935 NW2d 69 (2019) (quotation marks and citation omitted).

### III. DEFENDANT'S RIGHT TO ALLOCUTION

Defendant argues that his right to allocution was denied by the trial court's failure to ensure that he was present in the courtroom. This issue was waived.

"[I]ssues for appeal must be preserved in the record by notation of objection . . . ." *People v Carter*, 462 Mich 206, 214; 612 NW2d 144 (2000). A failure to properly object to an issue forfeits that issue, but does not extinguish the error; instead, it allows for plain error review. *Id*. at 215-216; *Carines*, 460 Mich at 763. Waiver, however, occurs when a defendant "affirmatively approve[s]" of an issue before the trial court, only to later argue that there was error on appeal. *Jackson*, 313 Mich App at 420. When waiver occurs, unlike forfeiture, the error is extinguished. *Carter*, 462 Mich at 215.

In the present case, there is no dispute that defendant did not object to his absence from the sentencing hearing. Thus, the issue is, at the very least, unpreserved. *Id*. at 214. Moreover, during the sentencing hearing, the trial court noted that defendant was not present in the courtroom. The trial court asked trial counsel about defendant's absence, and trial counsel informed the trial court that defendant stated he did not plan to come to court. The trial court then accepted testimony from a deputy, who stated that defendant was aware that the sentencing hearing was occurring, but that he was refusing to leave his jail cell. The trial court accepted that as an effective waiver of defendant's right to be in the room. Therefore, the record establishes that defendant was aware of the hearing taking place, aware that he had the opportunity to attend the hearing, and simply decided that he would prefer to remain in his jail cell. Stated differently, defendant approved of his absence in the courtroom by specifically acknowledging his opportunity to be there and declining to attend. *Jackson*, 313 Mich App at 420. There is no evidence that any other fact precipitated defendant's absence during the sentencing hearing. Thus, we hold that defendant waived this issue and extinguished any potential error.[3] *Carter*, 462 Mich at 215. "Any other

---

[3] Moreover, even if we were to consider the issue on its merits, we see no evidence that the trial court plainly erred as related to allocution. Our court rules and Michigan Supreme Court caselaw requires only that defendant be provided an opportunity to allocute. MCR 6.425(D)(1)(c); *People v Petit*, 466 Mich 624, 627-628; 648 NW2d 193 (2002). Here, the trial court provided defendant with an opportunity by ensuring that he was informed that the sentencing hearing was taking place and he could attend; defendant merely chose not to participate. Thus, because there was possibly an *opportunity* to allocute, the trial court did not plainly err. *Id*. For that same reason, defendant's

-5-

conclusion would be contrary to the rule that defendants cannot harbor error as an appellate parachute." *People v Pipes*, 475 Mich 267, 278 n 39; 715 NW2d 290 (2006) (quotation marks and citation omitted).

## IV. THE VICTIM'S IN-COURT IDENTIFICATION

Defendant, in his Standard 4 brief, contends that the victim's in-court identification of him should not have been admitted by the trial court. We disagree.

### A. STANDARD OF REVIEW

"A trial court's decision to admit identification evidence will not be reversed unless it is clearly erroneous." *People v Blevins*, 314 Mich App 339, 348; 886 NW2d 456 (2016). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *Id*. at 348-349.

### B. LAW AND ANALYSIS

The trial court did not clearly err in admitting the victim's in-court identification of defendant.

Defendant argues that the trial court clearly erred by allowing the victim to identify defendant in court when she had never done so outside of court. "A defendant's right to due process is implicated if an in-court identification was preceded by a suggestive out-of-court identification." *People v Posey*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket Nos. 345491 and 351834); slip op at 3, citing *Neil v Biggers*, 409 US 188, 196-198; 93 S Ct 375; 34 L Ed 2d 401 (1972). "If the trial court finds that the pretrial procedure was impermissibly suggestive, testimony concerning that identification is inadmissible at trial." *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993). In order to meet the burden related to the pretrial identification, "[t]he defendant must show that in light of the totality of the circumstances, the procedure used was so impermissibly suggestive as to have led to a substantial likelihood of misidentification." *People v Colon*, 233 Mich App 295, 304; 591 NW2d 692 (1998). Our Supreme Court has previously "noted that an improper suggestion often arises when the witness when called by the police or prosecution either is told or believes that the police have apprehended the right person." *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998) (quotation marks and citation omitted). Nevertheless, even when the defendant meets that burden of proving that an impermissibly suggestive pretrial identification occurred, "in-court identification by the same witness still may be allowed if an independent basis for in-court identification can be established that is untainted by the suggestive pretrial procedure." *Kurylczyk*, 443 Mich at 303.

---

alternative argument that his trial counsel was ineffective also lacks merit, because any objection would have been without any legal justification and, "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *Savage*, 327 Mich App at 617 (quotation marks and citation omitted).

Notably, the caselaw just discussed provides a framework for analyzing whether an in-court identification is still admissible when the witness participated in an impermissibly suggestive pretrial identification procedure. Defendant, however, has challenged the victim's identification of defendant on appeal, and it is not disputed that the victim did not participate in any pretrial identification procedure at all. Defendant acknowledges that fact, but attempts to shoe-horn his situation into the above analytical framework by claiming that the in-court identification itself was impermissibly suggestive, and then addressing whether an independent basis for that very same identification exists. *Id.* Defendant's argument is misplaced because there is relevant and binding caselaw holding that when an in-court identification is not preceded by a pretrial identification facilitated by law enforcement activity, then the in-court identification is admissible and any question about its validity is a credibility determination left to the jury. *Posey*, ___ Mich App at ___; slip op at 4. This Court reasoned that because "there was no improper law enforcement activity and no pretrial identification by" the witness, then "[i]t was for the jury to assess the reliability and credibility of [the witness]'s in-court identification of [the defendant] as" the perpetrator of the crime. *Id.* at ___; slip op at 5-6. Later, and more succinctly, the panel in *Posey* held that, under the circumstances, "there was no valid legal basis to challenge [the witness]'s in-court identification of [the defendant] . . . ." *Id.* at ___; slip op at 7.

We are now faced with the same situation that the panel in *Posey* addressed. Specifically, like the defendant in *Posey*, defendant in this appeal contends that the in-court identification of him by the victim was inadmissible because there was no pretrial identification facilitated by law enforcement activity by the victim. We are bound, then, under MCR 7.215(J)(1), to follow the binding precedent set in *Posey*, ___ Mich App at ___; slip op at 4-7, and hold that the victim's identification was properly admitted by the trial court, and that the question of whether to believe that identification was appropriately left to the jury. Defendant's argument is without merit. *Id.*

## V. UNAVAILABLE TRANSCRIPT

Defendant, in his Standard 4 brief, argues that he was prejudiced because one day of the trial was not recorded or transcribed. Because he has waived or abandoned this issue, we disagree.

Specifically, under MCR 7.210(B)(2), "[w]hen a transcript of the proceedings in the trial court or tribunal cannot be obtained from the court reporter or recorder, the appellant shall take" certain steps to settle the record. First, after becoming aware of the missing transcript, defendant was required to "file with the trial court or tribunal clerk, and serve on each appellee, a motion to settle the record and, where reasonably possible, a proposed statement of facts." MCR 7.210(B)(2)(a). The proposed statement of facts noted in the rule "must concisely set forth the substance of the testimony . . . in sufficient detail to provide for appellate review." *Id.* Subsequent, defendant was then required to "notice the motion to settle the record for hearing before the trial court or tribunal to be held within 21 days of the filing of the motion." MCR 7.210(B)(2)(b). The prosecutor would then have been provided the opportunity, before the hearing, to "file and serve on the appellant and other appellees an amendment or objection to the proposed statement of facts" filed by defendant. *Id.* After that, "[t]he trial court or tribunal shall settle any controversy and certify a settled statement of facts as an accurate, fair, and complete statement of the proceedings before it." MCR 7.210(B)(2)(c). The trial court would be required to adopt that "certified settled statement of facts . . . in sufficient detail to provide for appellate review." *Id.* Finally, defendant

-7-

would then have been required to "file the settled statement of facts and the certifying order with" this Court. MCR 7.210(B)(2)(d).

It is clear from the record that defendant did not follow this procedure. Defendant never moved the trial court to settle the record and did not create or provide a proposed statement of facts regarding what occurred on March 22, 2019. This failure occurred despite the fact that defendant, being the person who testified that day, was uniquely situated to recount his testimony for the trial court to potentially adopt. Defendant now comes to this Court demanding reversal of his convictions and a new trial, because he claims that the panel is unable to fully consider his appeal. However, by failing to engage in the process set out in MCR 7.210(B)(2), defendant has effectively abandoned or waived any issue related to the missing transcript. See *People v Anderson*, 209 Mich App 527, 535; 531 NW2d 780 (1995) ("Normally, failure to provide this Court with the relevant transcript, as required by MCR 7.210(B)(1)(a), constitutes a waiver of the issue."); *People v Johnson*, 173 Mich App 706, 707; 434 NW2d 218 (1988) (holding that because the defendant failed to provide a relevant transcript, this Court "consider[s] the[e] issue to be abandoned on appeal").

## VI. SUFFICIENCY OF THE EVIDENCE

Defendant, in his Standard 4 brief, argues that there was insufficient evidence to sustain his felony-firearm conviction. We disagree.

### A. STANDARD OF REVIEW AND GENERAL LAW

"We review de novo a challenge on appeal to the sufficiency of the evidence." *People v Henry*, 315 Mich App 130, 135; 889 NW2d 1 (2016), quoting *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). "To determine whether the prosecutor has presented sufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the prosecutor and determine 'whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' " *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013), quoting *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015), quoting *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

There is sufficient evidence for a guilty verdict where "a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *Tennyson*, 487 Mich at 735 (quotation marks and citation omitted). "The prosecution need not negate every reasonable theory of innocence; instead, it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018). "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *Blevins*, 314 Mich App at 357. Any and all conflicts that arise in the evidence must be resolved "in favor of the prosecution." *Mikulen*, 324 Mich App at 20. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

## B. APPLICABLE LAW AND ANALYSIS

Defendant only challenges his conviction of felony-firearm. "The Michigan Penal Code provides that a 'person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony . . . is guilty of a felony,' " which is "colloquially referred to as felony-firearm." *People v Washington*, 501 Mich 342, 352-353; 916 NW2d 477 (2018) (alterations in original; citations omitted), quoting MCL 750.227b(1). "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Muhammad*, 326 Mich App 40, 61; 931 NW2d 20 (2018), quoting *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).

For this issue on appeal, defendant challenges only the sufficiency of the evidence regarding the element of possession of a firearm—not the underlying felony. Defendant's argument focuses on the reliability of testimony related to the K-9 officer allowing his dog to follow the scent from the scene of the arrest back to the Dodge Magnum, which is where the gun was found. Defendant's contention is without merit because he has ignored significant other evidence of his possession of a gun while he carjacked the victim. First, the victim identified defendant as the person who pointed a gun at her, demanded her belongings, and stole her Dodge Magnum. Second, an eyewitness at the gas station who watched the scene unfold from her car, testified that the man who carjacked the victim did so at gunpoint. In the recording of her call to 911, which was played to the jury, that eyewitness described the gun and that the carjacker took the gun in the car when he drove away. Although the eyewitness could not identify defendant, he was later identified in the victim's Dodge Magnum by Officer John Arthurs, who was able to clearly see defendant while driving next to the car. Thus, the jury could have combined the eyewitness's testimony that the carjacker took the gun in the victim's automobile and drove away, along with Officer Arthur's identification of defendant inside that car, to determine that defendant possessed the gun during the carjacking.

Third, the prosecution also introduced evidence of defendant admitting to possessing a gun during his commission of the carjacking. In a telephone call on March 9, 2018, which was just three days after the carjacking, defendant stated that he would likely have to serve two years' imprisonment because he had been caught committing a crime while in possession of a gun. A few days later, on March 12, 2018, defendant once again stated that he was going to face multiple charges, with one particularly related to possession of a firearm, because he had been caught with a gun. The next day, March 13, 2018, the person to whom defendant was speaking asked defendant if he had a gun when he committed the crime, and defendant said, "hell yeah."

Fourth, defendant's challenge to the testimony about the dog tracking his scent back to the Dodge Magnum, even on its own, would not warrant reversal of defendant's conviction of felony-firearm. Officer Timothy Harris testified that his dog tracked a human scent from the scene of defendant's arrest back to the Dodge Magnum, where the suspect had begun his flight on foot. On cross-examination, Officer Harris was clear that he could not state for certain that his dog was tracking defendant's scent. Moreover, during further cross-examination, the trail that the dog took from the scene to the car was questioned. This cross-examination focused on the fact that defendant had jumped a fence, but the dog had gone around the fence when tracking. Thus, the jury was well aware of potential problems with Officer Harris's testimony and could have disbelieved it. Nevertheless, it was up to the jury to determine whether to infer that the dog was

tracking defendant's scent, which ultimately led back to the gun in the Dodge Magnum. "Witness credibility is a matter for the jury to decide." *People v Hoang*, 328 Mich App 45, 68; 935 NW2d 396 (2019). Further, on appeal, we must resolve any and all conflicts that arise in the evidence "in favor of the prosecution." *Mikulen*, 324 Mich App at 20. Therefore, defendant's challenge to the tracking-dog testimony, even if there was no other evidence of defendant's possession of a firearm, would not have been enough to reverse his conviction of felony-firearm. *Id.*

In sum, the victim identified defendant as the person who carjacked her at gunpoint, the eyewitness's and Officer Arthurs's testimony showed that defendant possessed a gun in the stolen car, and defendant admitted that he was caught using a gun in jailhouse telephone calls. In addition to that evidence, testimony from Officer Harris about his dog's ability to track human scent from the scene of defendant's arrest to the location where the gun was found in the Dodge Magnum supported that defendant possessed the firearm. Considering all of that, there was sufficient—even overwhelming—evidence that defendant possessed a firearm when he committed the crime of carjacking. *Tennyson*, 487 Mich at 735. Consequently, there was sufficient evidence to sustain defendant's conviction of felony-firearm. *Muhammad*, 326 Mich App at 61.

## VII. PROSECUTORIAL MISCONDUCT[4]

Defendant, in his Standard 4 brief, argues that the prosecutor committed misconduct requiring reversal. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

In cases alleging prosecutorial misconduct, issues are "preserved by contemporaneous objections and requests for curative instructions . . . ." *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017) (quotation marks and citation omitted). Defendant asserts that the prosecutor committed misconduct by making an array of alleged errors during cross-examination of defendant. Those purported events occurred during the final day of trial, which was not transcribed, as previously discussed. Even so, defendant has not alleged that he objected to the purported prosecutorial misconduct or requested a curative instruction. Consequently, this issue is not preserved for this Court's review. *Id.* Likewise, for the reasons discussed earlier in this opinion, defendant's arguments that rely solely on the fact that the transcript was missing have been waived or abandoned by his failure to follow the appropriate procedure under MCR 7.210(B)(2). See *Anderson*, 209 Mich App at 535 ("Normally, failure to provide this Court with the relevant transcript, as required by MCR 7.210(B)(1)(a), constitutes a waiver of the issue."); *Johnson*, 173 Mich App at 707 (holding that because the defendant failed to provide a relevant transcript, this Court "consider[s] the[e] issue to be abandoned on appeal.").

"Claims of prosecutorial misconduct are generally reviewed de novo to determine whether the defendant was denied a fair trial." *People v Dunigan*, 299 Mich App 579, 588; 831 NW2d 243 (2013). However, because these issues have not been preserved for review, we must review the

---

[4] We employ the phrase "prosecutorial misconduct" as a term of art synonymous with "prosecutorial error," not as an indication that the prosecution engaged in intentional misconduct. *Jackson*, 313 Mich App at 425 n 4.

"unpreserved claim for plain error affecting defendant's substantial rights." *Roscoe*, 303 Mich App at 648. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763. To show that a defendant's substantial rights were affected, there must be "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Randolph*, 502 Mich at 10 (citation omitted).

## B. LAW AND ANALYSIS

The prosecutor did not commit misconduct requiring reversal of defendant's convictions and a new trial.

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "We must evaluate instances of prosecutorial misconduct on a case-by-case basis, reviewing the prosecutor's [actions] in context and in light of the defendant's arguments." *People v Lane*, 308 Mich App 38, 62-63; 862 NW2d 446 (2014). "Generally, '[p]rosecutors are accorded great latitude regarding their arguments and conduct.' " *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (citation omitted). "They are free to argue the evidence and all reasonable inferences from the evidence as it relates to [their] theory of the case." *Id*. (quotation marks and citation omitted; alteration in original). In making those arguments, "[t]he prosecutor need not speak in the blandest of all possible terms." *Blevins*, 314 Mich App at 355 (quotation marks and citation omitted). "As the appellant . . . defendant bore the burden of furnishing the reviewing court with a record to verify the factual basis of any argument upon which reversal was predicated." *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000).

On appeal, defendant has identified three different instances of alleged prosecutorial misconduct. First, defendant contends that the prosecutor relied on inaccurate diagrams with the purpose of confusing the jury. Second, defendant contends that the prosecutor made statements of fact to the jury that were not supported by evidence on the record. Third, and finally, defendant contends that the prosecutor committed misconduct by asking defendant leading questions during cross-examination. Defendant insists that all of these instances of misconduct occurred on March 22, 2019, and thus, were not transcribed for this Court's review. In light of this argument by defendant, it is clear why we considered the issue regarding the missing transcript abandoned or waived, as discussed above. Had defendant engaged in the process set out in MCR 7.210(B)(2), he could have created a certified record potentially establishing what inaccurate diagrams were used, what facts were discussed by the prosecutor that were not supported by the evidence, and what questions defendant believes were improper. Instead of creating that record, as he was required to do, MCR 7.210(B)(2), defendant asks us to merely assume there were errors committed by the prosecutor and reverse.

Defendant appears to be operating under the assumption that this Court will presume an error occurs when a transcript is not available. Instead, the opposite is true. "Merely because the

records are unavailable does not give rise to a presumption of entitlement to an automatic reversal." *People v Iacopelli*, 141 Mich App 566, 568; 367 NW2d 837 (1985). " 'Doubts should be resolved in favor of the integrity, competence and proper performance of their official duties by the judge and the [prosecutor].' " *People v Carson*, 19 Mich App 1, 7 n 10; 172 NW2d 211 (1969), quoting *Bute v Illinois*, 333 US 640, 671; 68 S Ct 763; 92 L Ed 2d 986 (1948). " 'If any presumption is to be indulged it should be one of regularity rather than that of irregularity. . . . [S]uch a presumption of regularity indicates that the court constitutionally discharged rather than unconstitutionally disregarded, its state and federal duties.' " *Carson*, 19 Mich App at 7 n 10, quoting *Bute*, 333 US at 671. "The presumption of regularity has been recognized in Michigan." *Carson*, 19 Mich App at 7 n 10, citing *People v Auerbach*, 176 Mich 23, 43; 141 NW 869 (1913).

Nevertheless, that is not to say that "the unavailability of the transcript of the proceedings at which an accused person was convicted necessarily affects the validity of his conviction." *Iacopelli*, 141 Mich App at 568 (quotation marks and citation omitted). "The presumption of regularity, i.e., correctness, is not unassailable." *People v Abdella*, 200 Mich App 473, 475; 505 NW2d 18 (1993). "We hold, rather, that where there is no transcript the defendant may offer proof in support of his assertions of what occurred when he was convicted." *Iacopelli*, 141 Mich App at 568 (quotation marks and citation omitted). In order to overcome the presumption of regularity, a defendant "must satisfy the following requirements: (1) seasonably seek relief; (2) assert with specificity the alleged inaccuracy; (3) provide some independent corroboration of the asserted inaccuracy; (4) describe how the claimed inaccuracy in transcription has adversely affected the ability to secure postconviction relief . . . ." *Abdella*, 200 Mich App at 476 (citations omitted).

The standard espoused in *Abdella*, 200 Mich App at 475-477, requires more than mere speculation or conjecture on the part of defendant. Instead, he is required to specifically describe the errors, provide independent corroboration that the errors occurred, and explain how they prejudiced him. *Id*. Plainly, defendant has failed to do so in the present case. He argues that the prosecutor used an improper or misleading diagram of the scene of the arrest. Defendant did not, however, explain how the diagram was wrong or provide independent corroboration that it was misleading. Indeed, especially for this argument, it seems that defendant could have merely requested a copy of the diagram from the prosecutor, which then would have both explained and corroborated his allegations. His failure to do so renders his claim of prosecutorial misconduct unreviewable, and thus, without merit. *Id*.

Defendant also argues that the prosecutor improperly stated facts that were not supported by evidence in the record. For that argument, defendant has not identified any specific statement the prosecutor made that was untruthful. Once again, defendant also has not provided any independent corroboration—such as an affidavit from his trial counsel or a trial spectator—that the alleged statement was actually made. If we were provided a specific, allegedly false statement, it could potentially look to the days of trial that were transcribed to determine if there was record support for the prosecutor's statements. Defendant's utter failure to provide us with anything to review has rendered his claim of prosecutorial misconduct meritless. *Id*.

Lastly, defendant argues that the prosecutor committed misconduct by asking leading questions during cross-examination of defendant. He once again failed to identify what specific questions he believes were improper, independent corroboration that they were actually asked, and an explanation of how the questions caused him prejudice. This error by defendant is fatal to his

claim of prosecutorial misconduct. *Id.* Moreover, defendant's argument itself lacks legal support because generally, leading questions are permitted during cross-examination. *Dobek*, 274 Mich App at 68 ("There is nothing improper about this question; it is an acceptable leading cross-examination question."). Thus, for both reasons, defendant's final prosecutorial misconduct argument lacks merit.

## VIII. CONCLUSION

Defendant has not demonstrated that he is entitled to relief because his claims of error are meritless. Accordingly, we affirm his convictions and sentences.[5]

/s/ Cynthia Diane Stephens
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan

---

[5] Defendant also argues that even if we determine that none of the issues raised, on their own, have prejudiced defendant, we should still reverse because of the cumulative effect of those errors. That argument lacks merit because, as discussed throughout this opinion, we have not found any errors, and "[a]bsent the establishment of errors, there can be no cumulative effect of errors meriting reversal." *People v Green*, 313 Mich App 526, 537; 884 NW2d 838 (2015) (quotation marks and citation omitted; alteration in original).